2017 PA Super 362

| | |
|---|---|
| E.S. MANAGEMENT<br><br>Appellant<br><br>v.<br><br>YINGKAI GAO, PINGYUAN ZHENG,<br>FANGYUAN CAO AND XUE GAO<br><br>XUE GAO<br><br>v.<br><br>E.S. MANAGEMENT A/K/A KERPEC<br>CORPORATION | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br>No. 1271 WDA 2016 |

Appeal from the Judgment Entered September 14, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No: AR-14-5149, AR-14-5150

BEFORE:  STABILE, J., FORD ELLIOTT, P.J.E., and STRASSBURGER, J.[*]

OPINION BY STABILE, J.:                    **FILED NOVEMBER 15, 2017**

Appellant E.S. Management a/k/a Kerpec Corporation ("E.S. Management") appeals from the judgment entered in the Court of Common Pleas of Allegheny County ("trial court") against E.S. Management and in favor of Appellees Yingkai Gao, Pinguyan Zheng, Fangyuan Cao, and Xue Gao following the denial of E.S. Management's post-trial motions seeking

_____

[*] Retired Senior Judge assigned to the Superior Court.

judgment notwithstanding the verdict ("JNOV"). Upon review, we affirm in part and reverse in part.

The facts underlying this case are undisputed. As summarized by the trial court:

> Yingkai Gao, Xinyue Chen, Pingyuan Zheng and Fangyuan Cao ("the Students" hereafter), all citizens of China, needed housing for the 2014-2015 school year at Carnegie Mellon University. While the Students were in China, they had a friend in Pittsburgh go and look at 626 Maryland Avenue, #7 ("the Apartment" hereafter), which was available for rent from E.S. Management. On Wednesday June 11, 2014 the Students had a $5,785 security deposit plus a $100 application fee wire transferred by Yingkai Gao's aunt, Xue Gao [("Aunt")], to E.S. Management to prevent the Apartment from being rented to others. The Students, however, could not agree among themselves on utility charges,[FN1] hence on Friday, June 13, 2014 the Students notified E.S. Management they would not rent the Apartment. E.S. Management refused to refund the $5,785 security deposit[.]
>
> > [FN1.] The Lease E.S. Management emailed the Students said water and sewer charges over $30.00 per person per month will be pro-rated on a per person basis by dividing the excess amount by the number of persons in the building. The Lease also said that blatant excessive water use shall be paid by the Tenant(s) responsible.

Trial Court Opinion, 10/25/16, at 1-2. On July 24, 2014, Aunt filed a suit against E.S. Management ("First Case") in the magisterial district court, seeking to recover, *inter alia*, the security deposit. A month later, on August 24, 2014, E.S. Management filed a suit against the Students and Aunt ("Second Case") in the same magisterial district court. On October 30, 2014, the magisterial district court found in favor of E.S. Management in both cases and against the Students and Aunt.

On December 1, 2014, Aunt appealed to the trial court from the magisterial district court's decision in the First Case. On the same date, Aunt and the Students appealed the magisterial district court's decision in the Second Case, and filed a praecipe to enter rule to file complaint by E.S. Management.[1]

In the First Case, Aunt filed a complaint against E.S. Management, alleging causes of action for breach of contract, and violations of the Landlord and Tenant Act of 1951 ("LTA"), 68 P.S. § 250.101 *et seq.*, and Unfair Trade Practice and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201–1, *et seq.* In support, Aunt alleged the following facts:

15. On 06/10/2014, [Aunt], upon reasonable belief by the Students that in order to continue negotiations, she should forward [to E.S. Management] the amount of $5,885.00 which included a non-refundable $100.00 application fee and a fully refundable $5,785.00 towards a security deposit if continued negotiations were unsuccessful, did in fact forward the entire $5,885.00 to [E.S. Management].

16. On 6/11/2014, [E.S. Management] acknowledged receipt of the $5,885.00.

17. [E.S. Management] further told [Aunt] that in order for negotiations to conclude and a lease to be valid, all rental applications and the lease must be fully executed by all Students and sent to [E.S. Mangement] on the same day, 06/11/2014.

18. By 06/11/2014, only one (1) of the Students, Xinyue Chen, signed the lease, and sent it [sic] documents to [E.S. Management].

19. The other three (3) Students did not execute the lease, and did not fill out their applications.

---

[1] Xinyue Chen, the only one of the Students to submit a rental application, did not appeal the magisterial district court's decisions.

20. On 06/12/2014, [Aunt] queried further as to the exact utility charges the Students will face.

21. [E.S. Management] replied on 06/12/2014 with estimates of utility charges, and further stated: "Please keep in mind without your paperwork returned to our office (which was due Wednesday, June 11), we cannot complete your lease agreement and you risk forfeiting your security deposit. Please let me know if you have any other questions."

22. On 6/13/2014, only two (2) days after sending the $5,885.00 to [E.S. Management], [Aunt] notified [E.S. Management] that the Students "can't reach [an] agreement on the additional charges stated in the lease and not made known to us in the previous communications", and explicitly requested [E.S. Management] to return only the $5,785.00 paid towards a security deposit to [Aunt's] address[.]

23. The parties never executed a lease for the Apartment.

Aunt's Complaint, 12/1/14, at ¶¶ 15-23. Among other things, Aunt sought treble damages for E.S. Management's alleged UTPCPL violations.

In the Second Case, E.S. Management complied with Aunt and the Students' praecipe to file a complaint. Following objections to its first complaint, E.S. Management filed an amended complaint against Aunt and the Students on January 21, 2015, raising a cause of action for breach of contract and, in the alternative, for promissory estoppel. In turn, on February 11, 2015, Aunt and the Students filed an answer with new matter, asserting, *inter alia*, counterclaims for breach of contract and violations of the LTA and the UTPCPL. In essence, Aunt and the Students' counterclaims mirrored the causes of action Aunt raised against E.S. Management in the First Case.

Upon Aunt's motion, the trial court consolidated both cases on January 23, 2015. In accordance with local rules, the cases were submitted to

- 4 -

compulsory arbitration.[2]  On March 5, 2015, in the First Case, the arbitrators issued an award in favor of Aunt and against E.S. Management for $5,785.00.  In the Second Case, the arbitrators issued an award for Aunt and the Students on E.S. Management's claims and for E.S. Management on Aunt and the Students' counterclaims.  E.S. Management filed a *de novo* appeal to the trial court.

The cases proceeded to a consolidated jury trial on the breach of contract claims.  At the conclusion of trial, the jury found that no contract existed between the parties and that E.S. Management failed to establish one of the elements of promissory estoppel.  The jury, however, did not award damages to either party.  Aunt and the Students then requested that they be permitted to poll the jury.  The trial court granted their request. Upon being polled, the jurors unanimously indicated that they intended to award and refund Aunt and the Students the security deposit of $5,785.00. The trial court noted that, because Aunt and the Students failed to plead a

---

[2] Allegheny County Local Rule 1301, relating to arbitration, provides, in relevant part, as follows:

> (1)   The following civil actions shall first be submitted to and heard by a Board of Arbitrators:
>
>    . . . .
>
>    (c) Appeals from final judgments of Magisterial District Judges[.]

Allegheny Cty.Civ.Fam.R. 1301(1)(c).

count for unjust enrichment, the jury was without power to issue an award of *quantum meruit*.

Immediately after the trial court dismissed the jury, it conducted a bench trial on Aunt and the Students' remaining claims implicating the UTPCPL and the LTA. Following the bench trial, the trial court concluded that E.S. Management violated the UTPCPL and that Aunt and the Students were entitled to treble damages. Specifically, the trial court found:

> [1.] E.S. Management violated the [LTA] provision at 68 P.S. § 250.511a by requiring "a sum in excess of two months' rent to be deposited in escrow for the payment of damages to the leasehold premises and/or default in rent thereof . . .," which also is a violation of the provision of the UTPCPL at 73 P.S. § 201-2(4)(xxi);
>
> [2.] E.S. Management's failure to inform the Students and [Aunt], either verbally or by writing, when it requested the $5,775.00 deposit, that this sum could be forfeited if the Students chose not to rent the [A]partment is a violation of the provision of the UTPCPL at 73 P.S. § 201-2(4)(xxi);
>
> [3.] E.S. Management's requirement that the Students sign its lengthy lease within only 2 days from the time they received the lease is a violation of the provision of the UTPCPL at 73 P.S. § 201-2(4)(xxi);
>
> [4.] E.S. Management's false claim that the Students and [Aunt] were responsible for rent for the entire term of the lease and utilities, even though two days after depositing the $5,755.00 they informed E.S. Management they would not be renting the [A]partment, is a violation of the provision of the UTPCPL at 73 P.S. § 201-2(4)(xxi); [and]
>
> [5.] Pursuant to UTPCPL provision at 73 P.S. § 201-9.2, [the trial court] award[s Aunt] and the Students their court costs, including those incurred with the Magisterial District Judge[.]

Trial Court's Findings and Non-Jury Verdict, 4/4/16, at ¶ 5. E.S. Management timely filed motions for post-trial relief, arguing that the UTPCPL does not govern the instant dispute because no lease existed

between the parties. *See* E.S. Management's Motion for Post-trial Relief, 4/20/16, at ¶¶ 7-13. E.S. Management further argued that the trial court erred in concluding that E.S. Management had violated Section 250.511a of the LTA because the jury found that no lease existed between the parties. In other words, E.S. Management did not have a landlord-tenant relationship with Appellees. E.S. Management also argued that the trial court erred in concluding that the UTPCPL requires more than a two-day review period for residential leases. E.S. Management next argued that the trial court abused its discretion in concluding that E.S. Management violated the UTPCPL when it claimed that Aunt was responsible for rent for the entire term of the lease and utilities. E.S. Management finally argued that the award of treble damages was excessive.

In response, Aunt and the Students argued that E.S. Management had waived its claim that the UTPCPL is inapplicable to the dispute at hand because it raised the claim for first time in its post-trial motion. They further argued that the LTA applied through the UTPCPL. Aunt and the Students also argued that E.S. Management's decision to grant them only two days to review the lease was deceptive conduct under the UTPCPL. In addition, they argued that E.S. Management's claim that Aunt was liable for rent and utilities was a false and deceptive claim under the UTPCPL. Lastly, Aunt and the Students argued that the award of treble damages was appropriate under the circumstances.

On June 25, 2016, the trial court denied E.S. Management's post-trial motions. On August 23, 2016, E.S. Management timely appealed to this Court. The trial court ordered E.S. Management to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. E.S. Management complied, repeating the claims raised in its post-trial motions. On September 14, 2016, E.S. Management filed a praecipe for entry of judgment. On October 15, 2016, the trial court issued a Pa.R.A.P. 1925(a) opinion, concluding that E.S. Management was not entitled to relief.

On appeal, E.S. Management raises five issues for our review:

I. Whether the trial court erred in awarding damages under the [UTPCPL], where the jury determined that there was no contract between the parties, as the UTPCPL requires that there must be a "purchase or lease" of goods or services in order to allow a private party claim?

II. Whether the trial court erred in finding that E.S. Management violated the [LTA] and that that violated the UTPCPL?

III. Whether the [trial] court erred in finding the UTPCPL requires more than a two-day review period for a tenant's review of a residential lease?

IV. Whether the [trial] court erred in finding that E.S. Management made a "false claim" in litigation and that that violated the UTPCPL?

V. Whether the [trial] court erred in its use of discretion in trebling the damages under the UTPCPL?

E.S. Management's Brief at 6-7 (unnecessary capitalization omitted).[3]

_____

[3] We observe that E.S. Management reprises exactly its position from below. Indeed, its brief, in large part, is a reproduction of its "Brief in Support of Motion for Post-trial Relief," filed in the trial court on June 24, 2016.

At the outset, we note that we need not address E.S. Management's first issue relating to the applicability of the UTPCPL. As Aunt and the Student's aptly point out, the issue is waived because E.S. Management failed to assert it timely before the trial court. In fact, it asserted this issue for the first time after trial in its post-trial motions. A party "may not, at the post-trial motion stage, raise a new theory which was not raised during trial." **Keffer v. Bob Nolan's Auto Serv., Inc.**, 59 A.3d 621, 630 (Pa. Super. 2012) (citation omitted), **appeal denied**, 69 A.3d 602 (Pa. 2013). Moreover, explaining waiver in the context of post-trial motions, our Supreme Court remarked: "Rule 227.1, which governs post-trial relief, provides in relevant part that a ground may not serve as the basis for post-trial relief, including a judgment n.o.v., unless it was raised in pre-trial proceedings or at trial." **Straub v. Cherne Indus.**, 880 A.2d 561, 566 (Pa. 2005). "The Rule further notes that error that could have been corrected by timely objection in the trial court may not constitute a ground for such a judgment. Pa.R.C.P. 227.1(b)(1)." **Id.** Instantly, as Aunt and the Students emphasize, E.S. Management never objected to the application of the UTPCPL at any stage before the trial court prior to the filing of its post-trial motions. Even though E.S. Management raised the issue in its Rule 1925(b) statement, it still is waived because a party cannot preserve a claim not raised below by raising it in its Rule 1925(b) statement. **See Commonwealth v. Coleman**, 19 A.3d 1111, 1118 (Pa. Super. 2011) (issues raised for first time in Rule 1925(b) statement are waived); **see also**

Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.). Accordingly, E.S. Management's first issue on appeal is waived.

We now address E.S. Management's argument that the trial court erred in finding that E.S. Management's violated the LTA because it collected a security deposit from the Students that exceeded two months of rent and that such violation ran afoul of the UTPCPL.

Section 250.511a(a) of the LTA provides that "[n]o landlord may require a sum in excess of two months' rent to be deposited in escrow for the payment of damages to the leasehold premises and/or default rent thereof during the first year of any lease." 68 P.S. § 250.511a(a).

E.S. Management argues that the last month's rent of $1,795 qualifies as prepayment, and consequently, must not be considered a security for default rent. *See* E.S. Management's Brief at 19-20. We disagree.

Here, our review of the record confirms the trial court's finding that E.S. Management collected from the Students a security deposit that exceeded two months of rent. As the trial court correctly found, the Students transferred to E.S. Management $5,885, which reflected a non-refundable application fee of $100, two months' rent of $3,990 ($1,995 per month) and last month's rent of $1,795, less a $200 discount. Trial Court Opinion, 10/25/16, at 4; *see also* N.T. Trial, 3/30-4/1/16, at 237. In rejecting E.S. Management's argument that the last month's rent should be considered a prepayment of rent, the trial court reasoned:

> [T]he $1,795 was part of the $5,785 deposited with E.S. Management "to secure the execution of a rental agreement on residential property," therefore 68 P.S. § 250.511b clearly makes its deposit into an escrow account mandatory. Since the $1,795 is last month's rent, which is not owed to E.S. Management until twelve months in the future, that $1,795 is for "default in rent" during the last month. In addition, **an E.S. Management representative actually testified [at trial] that the $1,795 would be used for the last month's rent if the Students failed to pay rent that month**. [N.T. Trial, 3/30-4/1/16, at 547-48]. E.S. Management patently collected a security deposit that consisted of at least three months of rent when the [LTA] permits it to collect no more than two months of rent. It is disingenuous for E.S. Management to assert that rent paid twelve months before it is due is not for "default in rent." Hence, [the trial court] correctly determined that the security deposit required by E.S. Management exceeded two months of rent in violation of 68 P.S. § 250.511a of the [LTA].

Trial Court Opinion, 10/25/16, at 4-5 (emphasis added) (footnote omitted).

Accordingly, the record supports the trial court's conclusion that E.S. Management collected from the Students a security deposit in excess of two months of rent in violation of the LTA.

Having concluded that E.S. Management violated the LTA, we now must determine whether such violation also ran afoul of Section 201-2(4)(xxi) of the UTPCPL, which provides that "unfair or deceptive acts or practices" include the following: "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi).[4]

---

[4] The UTPCPL makes this violation unlawful if done in connection with any trade or commerce. *See* 73 P.S. § 201-3.

- 11 -

Instantly, we agree with the trial court's determination that E.S. Management's violation of the LTA also triggered a violation of the UTPCPL under the circumstances of this case. As the trial court explained:

> E.S. Management also contends that, even if the excessive security deposit violated the [LTA], [the trial court] incorrectly presumed this also violated the UTPCPL. However, [the trial court] did not presume this [LTA] violation automatically was in violation of the UTPCPL. Instead, [the trial court] found E.S. Management's conduct in collecting the security deposit was deceptive, which created a likelihood of confusion or misunderstanding in violation of the UTPCPL. There are two examples of this conduct. First, the lease that E.S. Management emailed to the Students set forth a much smaller security deposit of $1,995.00. Second, an E.S. Management representative disclosed at trial that it required the $3,990.00 "double security deposit" portion from the Students because they were international students without social security numbers and other information available from students who are U.S. citizens. This E.S. Management conduct was deceptive and would confuse someone with good understanding of the English language (the Students struggled to understand and speak English). Therefore, [the trial court] was correct in finding that the $5,785 security deposit required by E.S. Management violated the UTPCPL.

Trial Court Opinion, 10/25/16, at 4-5 (internal citations omitted). Accordingly, as the trial court found, E.S. Management demanded from the Students as a security deposit double rent in addition to last month's rent, whereas the lease provided to the Student required only a security deposit consisting of one month's rent. Accordingly, the trial court did not err in finding a UTPCPL violation.

We now turn to E.S. Management's argument that the trial court erred in finding a UTPCPL violation because E.S. Management failed to provide the Students more than two days to review the residential lease. We disagree.

The trial court fully explained:

The lease E.S. Management emailed the Students is a **typed, single-spaced document that is fifteen pages long**. Provisions include one for pro-rating water and sewer charges among the number of persons in the building and a "partial list of the minimum charges of assorted items or jobs that [may] sometimes be required after a residence is vacated." The last page of the lease contains this provision: TENANT(S) AGREES LANDLORD GAVE TENANT(S) TIME TO REVIEW THIS LEASE. IF THE LEASE TERMS ARE NOT UNDERSTOOD, TENANTS ARE ENCOURAGED TO SEEK THE ADVICE OF ANY ATTORNEY BEFORE SIGNING. BY SIGNING THIS LEASE, EACH TENANT AGREES HE OR SHE HAS READ AND UNDERSTANDS ALL OF THE TERMS AND CONDITIONS OF THIS LEASE WITH ANY ADDED CLAUSES, OR HOUSE RULES . . . ." E.S. Management allowed the students only two days to return a fully signed lease. It is deceptive to encourage students in China to seek the advice of an attorney and allow them only two days to do so. The water and sewage provision confused them since they had no idea of the number of persons in the building. Therefore, E.S. Management's conduct was deceptive, which created the likelihood of confusion in violation of the UTPCPL. Hence, [the trial court's] decision that E.S. Management violated the UTPCPL by giving the Students only two days to review the lease is correct.

Trial Court Opinion, 10/25/16, at 7-8 (unnecessary capitalizations omitted) (emphasis added). Thus, because E.S. Management provided the Students who were residing in China only two days to review a lengthy and complicated lease with the advice of legal counsel, we are constrained to agree with the trial court's conclusion that such conduct violated Section 201-2(4)(xxi) of the UTPCPL.

E.S. Management next argues that its demand that Aunt was liable for an entire year of rent and utilities payment under the lease did not fall within the purview of the UTPCPL because Aunt did not have a contractual relationship with E.S. Management.[5] We agree. Unlike the Students here

---

[5] E.S. Management's argument on the fourth issue is confined to one paragraph, which barely spans sixteen lines. The argument is not developed
*(Footnote Continued Next Page)*

who agreed to pay a security deposit to E.S. Management to secure the Apartment, Aunt did not have an agreement with E.S. Management. Rather, Aunt acted solely as an agent for the Students to transfer the money to E.S. Management.[6] Aunt did not have a separate, independent relationship with E.S. Management. Section 201-9.2 of the UTPCPL, relating to private actions, provides:

> Any person who **purchases or leases goods or services primarily for personal**, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 P.S. § 201-9.2 (emphasis added). Because Aunt was not a person who purchased or leased any goods or services from E.S. Management, E.S. Management's claim against her for rent and utility payment, no matter how deceptive and misleading, does not fall within the ambit of the UTPCPL. Accordingly, we reverse the trial court's conclusion to the contrary.

_(Footnote Continued)_ _____

sufficiently as it is bereft of any citation to relevant legal authority or record. **See** Pa.R.A.P. 2119; **see also Umbelina v. Adams**, 34 A.3d 151, 161 (Pa. Super. 2011) (stating "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived[]") (citation omitted), **appeal denied**, 47 A.3d 848 (Pa. 2012). We, however, decline to find waiver.

[6] Admittedly, even if the Students were not made whole by E.S. Management, Aunt would have an indemnification claim against them.

Lastly, E.S. Management argues that the trial court abused its discretion in awarding the Students treble damages. Section 201-9.2 of the UTPCPL provides in pertinent part:

> The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201–9.2(a). In discussing treble damages, our Supreme Court has explained:

> [A]s a matter of statutory construction, that the courts' discretion to treble damages under the UTPCPL should not be closely constrained by the common-law requirements associated with the award of punitive damages. . . . Nevertheless, the discretion of courts of original jurisdiction is not limitless, as we believe that awards of treble damages may be reviewed by the appellate courts for rationality, akin to appellate review of the discretionary aspect of equitable awards, as previously discussed. Centrally, courts of original jurisdiction should focus on the presence of intentional or reckless, wrongful conduct, as to which an award of treble damages would be consistent with, and in furtherance of, the remedial purposes of the UTPCPL.

*Schwartz v. Rockey*, 932 A.2d 885, 898 (Pa. 2007) (internal citation and footnote omitted).

Instantly, upon our review of the entire record, we conclude that the trial court did not abuse its discretion in awarding treble damages. As the trial court reasoned:

> While egregious conduct is not required for an award under the UTPCPL of "three times the actual damages sustained", [the trial court] did find that E.S. Management's conduct was egregious. E.S. Management knew that other renters were unlikely as the student rental season "window" had closed. Yet, E.S. Management rushed the Students into submitting the security deposit by telling them it would prevent other prospective tenants from renting the Apartment. But, it never told the

Students until after it got the funds that the funds could be forfeited if the Students did not lease the Apartment. Only two days passed between E.S. Management's receipt of the funds and the Students notifying E.S. Management they would not be renting the Apartment. Thus, E.S. Management attempted to extract $5,785 from the Students because the Apartment was removed from the rental market for two days. There was absolutely no credible evidence that E.S. Management lost the opportunity to rent to others during those two days. E.S. Management provided almost no services in return for the $5,785 and the Students of course, received absolutely nothing in return for it. To [the trial court], this was egregious conduct. In any event, the behavior of E.S. Management in violating the two months' rent security deposit law, not providing advance disclosure the security deposit would be forfeited, [and] providing only two days for review of the lease . . . constitutes "intentional or reckless, wrongful conduct" that makes [the trial court's] treble damages award appropriate. Therefore, [the trial court's] award of treble damages was correct.

Trial Court Opinion, 10/25/16, at 8-9. Accordingly, E.S. Management is not entitled to relief.

In sum, we affirm in part the trial court's September 14, 2016 judgment and reverse it to the extent the trial court determined that E.S. Management violated the UTPCPL because it demanded from Aunt an entire year's rent and utilities payment.

Judgment affirmed in part and reversed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/15/2017