J-A22013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARY MINCH & JOSEPH MINCH, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KDG RENTAL INC. AND DANIEL ZOLA | : | No. 392 EDA 2019 |
| & DONNA ZOLA AND TIMOTHY | : | |
| WENNER & DEANNA WENNER | : | |

Appeal from the Judgment Entered September 16, 2019
In the Court of Common Pleas of Monroe County Civil Division at No(s):
4576 CV 2016

BEFORE:   MURRAY, J., STRASSBURGER, J.[*], and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED OCTOBER 16, 2019**

In this slip-and-fall action, Mary Minch and Joseph Minch (Appellants) appeal from the judgment entered following a jury trial in which Timothy Wenner and Deanna Wenner (collectively, Cleaners) were found liable to Appellants, and nonsuit was granted in favor of KDG Rental Inc. (KDG), Daniel Zola, and Donna Zola (collectively, Landlords).[1]  Upon review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellants filed a notice of appeal on January 16, 2016, following the denial of their post-trial motion, but before judgment was entered on September 16, 2019.  **See Billig v. Skvarla**, 853 A.2d 1042, 1048 (Pa. Super. 2004) ("[I]n a case where nonsuit was entered, the appeal properly lies from the judgment entered after denial of a motion to remove nonsuit.").  Nevertheless, we deem Appellants' appeal as filed from the subsequently-entered judgment.  **See Johnston the Florist, Inc. v. Tedco Constr. Corp.**, 657 A.2d 511, 514-515 (Pa. Super. 1995) (en banc) ("[T]here are some instances wherein a party

On July 18, 2014, Mary Minch fell inside a vacation property rented from the Landlords. The evidence adduced at trial is generally undisputed. Daniel and Donna Zola operate KDG, a corporation that owned and rented out real property known as 170 Lake Drive, Lake Harmony, Pennsylvania. Appellants' son-in-law, Christopher Kennedy, executed an agreement to lease 170 Lake Drive for one week, beginning at 3:00 p.m. on July 18, 2014.

At trial, Donna Zola testified that 170 Lake Drive was KDG's only short term vacation rental. N.T. Trial, Vol. I, 6/5/18, at 29, 32, 38. Usually, Donna and Daniel Zola cleaned the property themselves. *Id.* at 31, 38. However, in July of 2013 — one year before Mary Minch's fall — Donna Zola was unable to clean, and asked her neighbors for the name of their cleaning person. *Id.* at 10 (Appellants' opening argument), 39, 41. The neighbors recommended the Cleaners, stating "that they do very good work [and] haven't had any complaints." *Id.* at 10 (Appellants' opening argument), 41. Based on the referral, the Cleaners performed one job for KDG in July of 2013. *Id.* at 39-40. Donna Zola did not have "any issues" with this cleaning, but also did not inspect their work. *Id.* at 43, 58.

Donna Zola subsequently arranged for the Cleaners to clean 170 Lake Drive in advance of Appellants' stay. Donna Zola did not have a written agreement with the Cleaners. N.T. Trial Vol. I, 6/5/18, at 47. The Cleaners

_____

has failed to enter judgment [due to oversight] and our appellate courts may 'regard as done that which ought to have been done.'").

did not have a business card, uniforms, other employees, or "a truck or a logo . . . that indicated who they were," and did not operate under any corporate umbrella. *Id.* at 40-41. The Cleaners used their own cleaning supplies. *Id.* at 59.

The Cleaners sent an invoice to Donna Zola, who paid them by mailing a check. N.T. Trial Vol. I, 6/5/18, at 42-43, 46. After Mary Minch's fall, Donna Zola had one telephone conversation with the Cleaners, but thereafter the Cleaners did not answer Donna Zola's phone calls and she could not locate them. *Id.* at 43-44.

Both Appellants testified that they arrived at the property around 2:45 p.m. on July 18, 2014. At the time, Mary Minch was approximately 68 years old. *See* N.T. Trial, Vol. II, 6/6/18, at 3. A cleaning woman exited the property and told them, "[W]e're done in here, you can go in"; a man was with her. N.T. Trial, Vol. I, 6/5/18, at 65; N.T. Trial, Vol. II, 6/6/18, at 5. Appellants entered the property, and Joseph Minch immediately used one bathroom, while Mary Minch used another bathroom.

After exiting the bathroom, Mary Minch stepped into the hallway onto the laminated floor and fell. She experienced "unbearable" pain. N.T. Trial, Vol. II, 6/6/18, at 7. She described the floor as "slippery," and stated that she felt "slime" on her pants, shoes, and hand. *Id.* There was a "puddle" of Orange Glo cleaner on the hallway floor where she fell. N.T. Trial, Vol. II, 6/6/18, at 32-33, 54, 91 (testimony of Marianne Kennedy); *see also* Appellants' Complaint, 6/27/16, at 3 (unpaginated). Mary Minch was

transported by ambulance to the hospital, where it was determined that she had a broken right femur and broken right ankle.

Appellants filed a complaint on June 27, 2016, raising counts of (1) negligence against KDG; (2) negligence against the Zolas on the theory of vicarious liability; (3) negligence against the Cleaners; and (4) loss of consortium for Joseph Minch. Pertinently, Appellants averred that (1) the Landlords were vicariously liable for the actions of the Cleaners; (2) the Landlords were additionally liable because the Cleaners were their agents; (3) the Landlords negligently hired the Cleaners; and (4) the Landlords knew or should have known of the dangerous condition on the floor.

The case proceeded to trial on June 5, 2018. The Cleaners did not appear and did not participate otherwise. Appellants presented the testimony summarized above, as well as testimony from their daughter Marianne Kennedy, and son-in law Christopher Kennedy. Christopher Kennedy testified that the day after Mary Minch's fall, he emailed Donna Zola, and Donna Zola replied, *inter alia*, "This is a professional cleaning company that we have cleaning the house." N.T. Trial Vol. II, 6/6/18, at 58.

Appellants also presented a report and testimony from Andres Calderon, Ph.D., who was qualified as an expert in the field of biomechanical and biomedical engineering. N.T. Trial, Vol. II, 6/6/18, at 49. Dr. Calderon testified that he tested the slipperiness, under various conditions, of the hallway floor at the property. He concluded that Orange Glo on the floor was "extremely slippery" and "hazardous," and that "everybody" who walked on it

would slip. *Id.* at 52.

Following the presentation of Appellants' case, the Landlords moved for compulsory nonsuit. N.T. Trial Vol. II, 6/6/18, at 111. The trial court granted their motion, finding first that the court — rather than the jury — would decide the issue of vicarious liability, and second, that the Landlords could not be vicariously liable for the Cleaners' conduct because the Cleaners were independent contractors, rather than in a master/servant relationship with the Landlords. N.T. Trial Vol. III, 6/12/18, at 2-4, 18; Order, 6/13/18. The court further found that the Landlords were not liable because they were out of possession of the property; the Landlords were not liable under the theory of ostensible agency;[2] and the Landlords did not negligently hire the Cleaners. *Id.* at 10, 13-14.

Appellants moved for a directed verdict against the Cleaners, which the trial court granted. N.T. Trial Vol. III, 6/12/18, at 19. Thus, the case proceeded to jury deliberation on the sole issue of damages, if any, owed by the Cleaners to Appellants. *Id.* at 20. The jury awarded Appellants $300,000, comprised of (1) $47,693.02 for Mary Minch's past medical expenses; (2) $200,000 for Mary Minch's past, present, and future pain and suffering, embarrassment, and loss of enjoyment of life; and (3) $52,316.98 for Joseph Minch's loss of consortium.

_____

[2] The theory of ostensible agency is also referred to as "agency by estoppel" and "apparent authority." *Loyle v. Hertz Corp.*, 940 A.2d 401, 404 n.2 (Pa. Super. 2007).

Appellants filed a timely motion for post-trial relief, requesting removal of the nonsuit granted in favor of the Landlords. The trial court denied the motion on December 17, 2018, and Appellants filed this appeal. Both Appellants and the trial court have complied with Pennsylvania Rule of Appellant Procedure 1925. As noted above, judgment was entered on September 16, 2019, and this appeal is now properly before us.

Appellants present four issues on appeal:

1. Did the trial court err in its Order of December 18, 2018 when it denied [Appellants'] Motion for Post-Trial Relief and Removal of Non-Suit because a genuine issue of material fact existed as to whether [the Landlords] were in possession of the rental property where Appellant slipped and fell?

2. Did the trial court err in its Order of December 18, 2018 when it denied [Appellants'] Motion for Post-Trial Relief and Removal of Non-Suit, concluding as a matter of law [the] Cleaners were independent contractors?

3. Did the trial court err in its Order of December 18, 2018 when it denied [Appellants'] Motion for Post-Trial Relief and Removal of Non-Suit, and dismissing the ostensible agency claims against [the Landlords]?

4. Did the trial court err its Order of December 18, 2018 when it denied [Appellants'] Motion for Post-Trial Relief and Removal of Non-Suit, and dismissing the negligent hiring/retention/ supervision claims against [the Landlords]?

Appellants' Brief at 4-6.[3]

---

[3] Although Appellants present four issues, the argument section of their brief is organized under six headings. We remind counsel that "[t]he argument shall be divided into as many parts as there are questions to be argued[.]" *See* Pa.R.A.P. 2119(a).

First, Appellants aver that the trial court improperly invaded the province of the jury by deciding the factual issue of whether the Landlords were out of possession of the property. Appellants' Brief at 17, *citing* ***Eisbacher v. Maytag Corp.***, 168 A.3d 298 (unpub. memo.) (Pa. Super. 2017). Appellants further suggest, in a footnote, that the court improperly granted nonsuit by not applying "[a] long established exception to the general rule of non-liability for landlords out of possession [where] the defect existed at the time [the] lease was executed." ***Id.*** at 21 n.2 (emphasis removed). We disagree.

At trial, in response to the Landlords' motion for nonsuit, Appellants first argued that the Landlords were **in** possession of the property. N.T. Trial Vol. III, 6/12/18, at 13 ("[T]his is not a landlord out of possession case."). Appellants also argued, however, that "a long standing exception to the landlord **out** of possession rule" applied — that if a "defect existed at the time that the lease commenced[,] the landlord remains responsible and has a duty to inspect."[4] ***Id.*** at 13-14 (emphasis added). Appellants maintained that there was no dispute that when Mary Minch walked into the premises, it was unsafe, "and she can't be deemed to have possession, they had possession

_____

[4] The trial court began the trial proceedings on June 12, 2018 by announcing its decision to grant the Landlords' motion for nonsuit. N.T. Trial Vol. III, 6/12/18, at 2. Thereafter, however, the court heard and responded to Appellants' arguments against the nonsuit. ***Id.*** 3-18. Because the trial court permitted these arguments, we consider them timely raised.

[sic]." *Id.* at 14. The trial court disagreed, finding that the Landlords were out of possession and accordingly were not liable. *Id.*at 14-15.

On appeal, Appellants present an argument that was not raised when the trial court considered the Landlords' motion for nonsuit — that the jury, not the court, should have decided whether the Landlords were in or out of possession. While Appellants did raise this issue in the brief supporting their post-trial motion, their failure to timely raise the issue, before nonsuit was granted, results in waiver.[5] *See E.S. Mgmt. v. Gao*, 176 A.3d 859, 864 (Pa. Super. 2017) ("A party 'may not, at the post-trial motion stage, raise a new theory which was not raised during trial.'").

Furthermore, Appellants' footnote regarding a landlord-out-of-possession exception does not merit relief. *See* Appellants' Brief at 21 n.2. We note the standard of review of entries of non-suit: "[W]e must resolve all conflicts in the evidence in favor of the party against whom the non-suit was entered." *Gregury v. Greguras*, 196 A.3d 619, 625 (Pa. Super. 2018) (*en banc*) (citation omitted).

> A motion for compulsory non-suit allows a defendant to test the sufficiency of a plaintiff's evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause

---

[5] The certified record does not include Appellants' post-trial motion, but does include the brief in support. Nevertheless, we need not verify whether Appellant's **motion** raised the issue now presented on appeal, as the dispositive inquiry is whether Appellants presented the issue before the trial court granted nonsuit, and the trial transcript indicates that they did not. *See* N.T. Trial Vol. II, 6/6/18, at 115-127; N.T. Trial Vol. III, 6/12/18, at 13-14.

of action; in making this determination, the plaintiff must be given the benefit of all reasonable inferences arising from the evidence. When so viewed, a non-suit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury.

*Id.* (citation omitted).

Generally, a party is a "possessor" of land if he (1) is in occupation of the land with the intent to control it; (2) has been in occupation of the land with intent to control it if no other party has done so subsequently; or (3) is entitled to immediate occupation if neither of the other alternatives apply. ***Blackman v. Federal Realty Inv. Trust***, 664 A.2d 139, 142 (Pa. Super. 1995), *citing* Restatement (Second) of Torts § 328E (1965).

"As a general rule, a landlord out of possession is not liable for injuries incurred by third parties on the leased premises because the landlord has no duty to such persons." ***Jones v. Levin***, 940 A.2d 451, 454 (Pa. Super. 2007) (citations omitted). However:

> [a] landlord out of possession may incur liability (1) if he has reserved control over a defective portion of the demised premises; (2) if the demised premises are so dangerously constructed that the premises are a nuisance *per se*; (3) if the lessor has knowledge of a dangerous condition existing on the demised premises at the time of transferring possession and fails to disclose the condition to the lessee; (4) if the landlord leases the property for a purpose involving the admission of the public and he neglects to inspect for or repair dangerous conditions existing on the property before possession is transferred to the lessee; (5) if the lessor undertakes to repair the demised premises and negligently makes the repairs; or (6) if the lessor fails to make repairs after having been given notice of and a reasonable opportunity to remedy a dangerous condition existing on the

leased premises.

***Dorsey v. Continental Assoc.***, 591 A.2d 716, 718-719 (Pa. Super. 1991) (citations omitted).

In arguing that there is an additional exception — that an out of possession-landlord will be liable merely if a property defect existed when the lease commenced — Appellants provide a string cite of Pennsylvania Supreme Court and Superior Court cases from 1890 through 1953.[6]  Appellants' Brief at 21 n.2.  However, Appellants do not discuss these cases, which we determine are distinguishable.  For example, in ***McLaughlin***, testimony showed that the defect at issue — rotten wooden framework that covered a hole in the ground — had existed for 10 or 15 years, and in ***Kelly***, there was evidence that the defect — rusted door hinges — had existed for 15 or 16 years.  **See *McLaughlin***, 79 A. at 555; ***Kelly***, 97 A.2d. at 835.  Here, Appellants made no comparable argument that the Orange Glo was on the floor for a prolonged period.  Further, both ***Knickerbocker*** and ***Gerber*** involved defects in the sidewalk and were governed by principles specific to sidewalks.  **See *Knickerbocker***, 25 A.2d at 318-322 ("T]here is a difference

---

[6] Appellants cite ***Harte v. Jones***, 134 A. 467 (Pa. 1926), ***Knickerbocker v. Scranton***, 25 A.2d 152 (Pa. 1942), ***Harte v. Jones***, 134 A. 467 (Pa. 1926), ***McLaughlin v. Kelly***, 79 A. 552 (Pa. 1911), ***Kirchner v. Smith***, 56 A. 947 (Pa. 1904), ***Reading v. Reiner***, 31 A. 357 (Pa. 1895), ***Wunder v. McLean***, 19 A. 749 (Pa. 1890), ***Kelly v. Horn***, 97 A.2d 833 (Pa. Super. 1953), ***Gerber v. Jones***, 30 A.2d 534 (Pa. Super. 1943), and ***Ford v. Philadelphia***, 24 A.2d 746 (Pa. Super. 1942).

in status between persons inside the premises and persons outside the premises. The rules applicable are not the same and the theories supporting the rules are different."); *Gerber*, 30 A.2d at 535.

Additionally, Appellants claim that *Dinio v. Goshorn*, 270 A.2d 203 (Pa. 1969), "broadened" the exception "to include situations where the owner, at the time of leasing, could have discovered the defect through reasonable inspection." Appellants' Brief at 21 n.2. Appellants disregard that the Court in *Dinio* specified: "In those instances where, at the time of the leasing, the landlord **knows, or has reason to know**, of a defect, he cannot escape liability." *Dinio*, 270 A.2d at 206. Here, Appellants presented no evidence that the Landlords caused, observed, or had reason to know of the slippery floor. Thus, the trial court properly found that no exception applied, and as out-of-possession landlords, the Landlords were not liable. *See* Trial Court Opinion, 3/11/19, at 6-8; *Jones*, 940 A.2d at 454; *Dorsey*, 591 A.2d at 718-719.

In their second issue, Appellants allege that the trial court usurped the role of the jury by finding that the Cleaners were independent contractors, rather than in a master/servant relationship with the Landlords.[7] Appellants' Brief at 27, *citing* **Cox v. Caeti**, 279 A.2d 756, 759 (Pa. 1971). Appellants contend that the evidence at trial established a master/servant relationship.

---

[7] This issue was preserved at trial. *See* N.T. Trial Vol. III, 6/12/18, at 14.

Appellants cite Donna Zola's testimony that the Cleaners were "just filling in for her"; there was no written contract; she did not hire the Cleaners due to any specialized skills or knowledge on the Cleaners' part; and she told the Cleaners "exactly what to do and when to do it." *Id.* at 27, 31, 33 (emphasis removed). We disagree.

This Court has stated:

> As a general rule, while an employer may be held responsible for negligent acts of its servants/employees, it will not be held liable for harm caused by acts of independent contractors. . . . The test for determining whether one is a servant or an independent contractor is well-established:
>
> > The characteristic of the former relationship is that the master not only controls the result of the work but has the right to direct the way in which it shall be done, whereas the characteristic of the latter is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result . . . . ["]It is not . . . the fact of actual interference or exercise of control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor . . . ."
>
> "It is the exclusive function of the jury to determine, from the evidence, the precise nature of the relationship, except where the facts are not in dispute, in which latter event the question becomes one for determination by the court."

*Lutz v. Cybularz*, 607 A.2d 1089, 1091 (Pa. Super. 1992) (citations omitted).

*See also Kirschner v. K & L Gates LLP*, 46 A.3d 737, 761 (Pa. Super. 2012) ("It is the exclusive function of the jury to determine, from the evidence, the precise nature of the relationship, except where the facts are not in dispute, in which latter event the question becomes one for determination by the

court.").

Appellants do not cite any inconsistency or dispute in the evidence about the relationship between the Landlords and the Cleaners. Instead, their argument goes to the conclusion that should have been reached based on the evidence. Thus, consistent with the **Cox** decision — cited by Appellants — it was proper for the trial court to determine whether the Cleaners were independent contractors or in a master/servant relationship with the Landlords. **See Cox**, 279 A.2d at 758 ("If the facts as to such relationship are in dispute, it is the function of a jury to determine the precise nature of the relationship between the parties[.] However, where the facts are not in dispute, the question of the relationship becomes one for determination by the court[.]"); **Kirschner**, 46 A.3d at 761; **Lutz**, 607 A.2d at 1091.

We next review the trial court's finding that the Cleaners were independent contractors. Appellants presented the same arguments to the trial court that they advance on appeal. The court reasoned, *inter alia*, that (1) the mere lack of a written agreement between the Cleaners and the Landlords did not signify that the Cleaners were employees of the Landlords; (2) Donna Zola had only arranged for the Cleaners to clean on two occasions; (3) although the Landlords directed that the cleaning to be performed at a particular time, they did not control the manner of work, and instead, the Cleaners "were responsible for the result only"; (4) the Cleaners presented the Landlords with an invoice; and (5) the Landlords did not have, as

Appellants claimed, "a right . . . to terminate the employment of [the Cleaners] at any time," but rather the Landlords could simply "choose not to hire the [Cleaners] again."  N.T. Trial Vol. II, 6/6/18 at 117-118; N.T. Trial Vol. III, 6/12/18, at 4-8.  In sum, the trial court properly weighed the factors set forth in **Lutz**, and we do not disturb its decision.  **See Gregury**, 196 A.3d at 625; **Lutz**, 607 A.2d at 1091.

In their third issue, Appellants assert that the trial court erred in dismissing their claim of ostensible agency.[8]  They cite Section 429 of the Restatement (Second) of Torts, which provides that an employer is liable for the acts of an independent contractor employed "to perform services . . . which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants."  Appellants' Brief at 34-35, *citing* Restatement 2d of Torts, § 429.  Appellants reason that they "were permitted to enter the property at [the Cleaners'] direction," Appellants "understood the [C]leaners worked for the" Landlords, the Landlords "represented to Appellants in emails that the [Cleaners] were 'their' cleaners,"

_____

[8] The Landlords claim this issue is waived because Appellants did not raise ostensible agency in their complaint.  Landlords' Brief at 36.  While we agree that the complaint did not articulate the phrase "ostensible agency," it did aver that the Cleaners were "agents" of the Landlords.  **See** Appellants' Complaint, 6/27/16, at 2 (unpaginated).  Thus, we decline to find waiver.  **See Loyle**, 940 A.2d at 404-405 (complaint alleged sufficient facts to claim of ostensible agency against Hertz Corp., where complaint averred, *inter alia*, that "Hertz's 'employees, servants and **agents**' (emphasis added) were the personnel directly responsible for the alleged tortious conduct").

- 14 -

and the Landlords "admitted the [Cleaners] were working for [them] because they were out of town." *Id.* at 36.

This Court has stated:

Restatement (Second) of Agency, Section 267, defines ostensible agency as follows: "One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such."

*Parker v. Freilich*, 803 A.2d 738, 746 (Pa. Super. 2002).

As a general rule, an employer is not liable for torts committed by an independent contractor in his employ. We have, however, recognized an exception to the general rule, stated in section 429 of the Restatement (Second) of Torts, which provides that one who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

*Id.* at 746-747 (citation omitted).

Here, the parties and trial court's discussion of ostensible agency was brief. *See* N.T. Trial Vol. II, 6/6/18, at 124; N.T. Trial Vol. III, 6/12/18, at 3, 10-11. Contrary to Appellants' inference, the Landlords did not, in the email to Christopher Kennedy, represent that the Cleaners were their employees. *See* Appellants' Brief at 36. Christopher Kennedy's testimony was that Donna Zola's email stated, "This is a professional cleaning company that we have cleaning the house." N.T. Trial Vol. II, 6/6/18, at 58. The trial court

considered both the email and the fact that the Cleaners allowed Appellants entry into the property, and ruled that these facts were insufficient to establish ostensible agency. N.T. Trial Vol. III, 6/12/18, at 3, 10-11. We agree. Donna Zola's email conveyed that the Cleaners were a separate organization or business. Accordingly, Appellants' ostensible agency claim does not merit relief.

We address Appellants' final two claims together. Appellants maintain that they presented sufficient evidence on their common law negligence claims, and thus these claims should have been submitted to the jury. Appellants did not timely raise this issue before the court entered nonsuit, and thus it is waived. *See E.S. Mgmt.*, 176 A.3d at 864.

Next, Appellants infer that the Landlords were negligent in hiring the Cleaners, where the Landlords' "due diligence" was limited to "a short conversation with their neighbors about these cleaners" and "a 10 min[ute] conversation with [the C]leaners in the driveway." Appellants' Brief at 38-39. Appellants reiterate that the Cleaners did not have an established business, business cards, logo on their vehicle, guarantees or bonds, and "supervisor to call if there [was] an issue or emergency." *Id.* Appellants' reliance on the theory of negligent hiring is misplaced.

This Court has stated:

It has long been the law in this Commonwealth that an **employer** may be liable in negligence if it knew or should have known that an **employee** was dangerous, careless or incompetent and such employment might create a situation where the employee's

- 16 -

conduct would harm a third person. This common law principle, as **applied to an employee acting outside the scope of employment**, was later embodied in Section 317 of the Restatement (Second) of Torts which has been adopted in Pennsylvania.

*Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 39-40 (Pa. Super. 2000) (emphases added) (citations omitted). "[A]n action for negligent hiring provides a remedy to injured third parties who would otherwise be foreclosed from recovery under the master-servant doctrine because the wrongful acts of employees in these cases are likely to be outside the scope of employment or not in furtherance of the master's business." *Heller v. Patwil Homes*, 713 A.2d 105, 107 (Pa. Super. 1998).

As discussed above, the trial court did not err in finding that the Cleaners were independent contractors. Thus, the Cleaners were not "employees" of the Landlords, nor in a master/servant relationship within the above paradigm for finding negligent hiring. *See Brezenski*, 755 A.2d at 39-40; *Heller*, 713 A.2d at 107. *See also Barnes v. Alcoa, Inc.*, 145 A.3d 730, 735 (Pa. Super. 2016) (trial court properly granted Alcoa's motion for compulsory nonsuit on plaintiff's claim of negligent hiring of two individuals, where plaintiff failed to present sufficient evidence that the two individuals were Alcoa's employees). Furthermore, Appellants do not allege that the Cleaners' conduct — leaving excess Orange Glo cleaner on the floor — was outside the scope of their alleged employment to clean the property. *See id.*; *compare with Hutchison by Hutchison v. Luddy*, 742 A.2d 1052, 1059 (Pa. 1999 (church

diocese and bishop negligently hired priest who sexually molested minor); ***Heller v. Patwil Homes, 713 A.2d 105***, 106-107 (Pa. Super. 1998) (home construction company negligently hired sales manager who fraudulently convinced buyers to "invest" $49,500 in his "investment business"; sales manager subsequently pleaded guilty to criminal charges arising out of the investment scheme). ***Contra Brezenski***, 755 A.2d at 38-39 (truck-transporting business did not negligently hire truck driver who fatally shot a man and shot a coworker, because driver's criminal acts were not related to truck driving).

In sum, and consistent with the foregoing, we find that the trial court did not err in finding that the Landlords were not liable as landlords out-of-possession; the Landlords were not vicariously liable because the Cleaners were independent contractors; the Landlords were not liable under ostensible agency; and the Landlords did not negligently "hire" the Cleaners.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/19

- 18 -