J-A24005-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| JOSEPH A. PIOLE, AN INDIVIDUAL | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES J. PUPICH, AN INDIVIDUAL | : | No. 1654 WDA 2019 |

Appeal from the Judgment Entered December 5, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 06-23189

| | | |
|---|---|---|
| JOSEPH A. PIOLE, AN INDIVIDUAL | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES J. PUPICH, AN INDIVIDUAL | : | |
| | : | |
| Appellant | : | No. 1697 WDA 2019 |

Appeal from the Judgment Entered December 5, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  G.D. 06-23189

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:               FILED NOVEMBER 18, 2020

Appellant, Joseph A. Piole (hereinafter "Tenant"), appeals and Appellee,

Charles J. Pupich (hereinafter "Landlord"), cross-appeals from the December

5, 2019 judgment entered in favor of Tenant following a jury trial.[1]  After review, we affirm.

The trial court summarized the background of this case as follows:

[Tenant] instituted this action by Writ of Summons on September 28, 2006, after a commercial property owned by [Landlord] and leased to [Tenant] caught fire on September 29, 2004.[2]  The original complaint filed on December 6, 2006, alleged negligence, breach of both a written and oral contract[,] and unjust enrichment.[3]  After [Tenant's] first counsel withdrew his

_____

[1] Tenant purports to appeal from the trial court's October 8, 2019 order denying his post-trial motion to mold the verdict, and Landlord claims to appeal from the trial court's October 23, 2019 order denying his post-trial motion.  An order denying post-trial motions is interlocutory and generally not appealable.  See Levitt v. Patrick, 976 A.2d 581, 584 n.2 (Pa. Super. 2009) (stating that an appeal properly lies from the entry of judgment, not from an order denying post-trial motions); Fanning v. Davne, 795 A.2d 388, 391 (Pa. Super. 2002) ("An appeal from an order denying post-trial motions is interlocutory.  An appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of post-verdict motions, not from the order denying post-trial motions.") (citations omitted).  However, because judgment was subsequently entered on December 5, 2019, we consider both parties' appeals as taken from the entry of judgment.  See Johnston the Florist, Inc. v. TEDCO Const. Corp., 657 A.2d 511, 514-15 (Pa. Super. 1995) (stating that appellate courts may "regard as done that which ought to have been done") (citations omitted).  We have amended the captions accordingly.

[2] Both parties describe the fire as destroying the property.  See Tenant's Brief at 5; Landlord's Brief at 7.  Neither party disputes that the costs of repairing it exceeded 25% of the replacement cost of the building.

[3] Our review of the record indicates that the trial court dismissed Tenant's negligence and unjust enrichment claims on December 1, 2015.  With respect to Tenant's breach-of-written-contract claim, he asserted in his complaint that Landlord breached the lease when, on December 23, 2004, Landlord "attempt[ed] to give [Tenant] notice that 'the [l]ease is terminated and your tenancy therein is no longer in force or effect.'"  Complaint, 12/28/06, at ¶ 24.  Tenant alleged that "[t]he purported termination was invalid since it was

appearance on September 9, 2007, this case sat dormant until [Tenant] retained new counsel, who entered their appearance on March 24, 2013. The case was originally tried before a jury, which returned a verdict on December 3, 2015[,] in favor of [Landlord]. Following the verdict, a new trial was granted by [the Honorable Alan Hertzberg of the Court of Common Pleas of Allegheny County,] on June 29, 2016[,] as a result of misconduct and jury prejudice. The grant of a new trial was appealed to the Pennsylvania Superior Court on July 12, 201[6], who ultimately affirmed the granting of a new trial and remanded the case....[4]

This [c]ourt presided over the second trial, which began on May 10, 2019. Following a 3-day jury trial, a verdict was returned in favor of [Tenant], with an award of $120,500.00 for breach of a written contract and $0.00 for breach of an oral contract. Subsequent to the verdict, [which was docketed on May 14, 2019, Tenant] filed a Motion to Mold the Verdict to include prejudgment interest [on May 23, 2019]. [Landlord also] filed a [timely] Motion for Post-Trial [R]elief, arguing [that Tenant] failed to establish a right to recovery ... because the verdict was against the law and the weight of the evidence. Argument on both motions and testimony regarding the Motion to Mold ... was taken on October 8, 2019, after which this [c]ourt denied both motions. [Tenant] filed an appeal on November 7, 2019, alleging this [c]ourt's denial of the Motion to Mold Verdict was done in error. [Landlord] subsequently filed a Cross Notice of Appeal on November 13, 2019, alleging this [c]ourt also erred in denying [his] Motion for

_____

not provided within '45 days of the date of the occurrence' [, i.e., the date of the fire,] as required by Article 21 of the lease[,]" which we set forth infra and refer to as the "Fire Clause." Id. at ¶ 25. As a result of this breach, Tenant averred, inter alia, that he suffered a loss of profits from the subleases he had arranged for the premises. Id. at ¶ 28. Additionally, regarding Tenant's breach-of-oral-contract claim, Tenant alleged that the parties had an oral agreement that Landlord "would use a portion of the insurance proceeds to rehabilitate the premises, so that [Tenant] could continue as a tenant under the lease." Id. at ¶ 26. Tenant also claimed that Landlord breached an oral agreement to reimburse Tenant for his personal property destroyed by the fire. Id. at ¶ 27.

4 See Piole v. Pupich, 169 A.3d 1223 (Pa. Super. 2017) (unpublished memorandum).

Post-Trial Relief. This [c]ourt ordered both parties to file [Pa.R.A.P.] 1925(b) Statement of Errors Complained of on Appeal…, [and] both sides timely complied with [that order].

Trial Court Opinion ("TCO"), 1/6/20, at 2-3.[5]

### Landlord's Appeal

For ease of disposition, we address Landlord's appeal first. He raises the following two issues for our review:

[1.] Whether the trial court erred when it did not enter [judgment notwithstanding the verdict ("JNOV")] when [Landlord] was entitled to judgment as a matter of law because [Tenant] never paid rent on the commercial lease [and], therefore, no consideration for the lease existed?

[2.] Whether the trial court erred when it did not enter [JNOV] on the limitations of the [F]ire [C]lause, which limited damages to ninety days of rent?

Landlord's Brief at 5 (unnecessary capitalization omitted).

At the outset, we recognize:

A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must

_____

[5] On October 7, 2020, we filed a memorandum remanding this case for the parties to supplement the record in the trial court with a properly certified, original trial transcript and trial exhibits. See Piole v. Pupich, 2020 WL 5946969 (Pa. Super. 2020) (unpublished memorandum). On October 20, 2020, we received the supplemental record from the trial court, containing the trial transcript and trial exhibits. The trial transcript included therein, however, is not certified by the court reporter. See Pa.R.J.A. 4013 ("Court reporting personnel who take the notes, record or transcribe a proceeding shall certify that the transcript of proceedings is true and correct and meets the format specifications established by the Supreme Court of Pennsylvania in Rule 4010."). While we admonish the parties for not following our order, we will overlook this omission because neither party contests the transcript's validity or accuracy.

consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

V-Tech Services, Inc. v. Street, 72 A.3d 270, 275 (Pa. Super. 2013) (citation omitted).

In Landlord's first issue, he argues that Tenant's "failure to pay any rent under the lease agreement relieved [Landlord] of any obligations under the lease agreement." Landlord's Brief at 21 (unnecessary capitalization and emphasis omitted).[6] He asserts that "[i]t is undisputed that [Tenant] never paid any rent under the lease agreement[,]" and Tenant's "failure to pay rent constituted a material breach of the contract which relieved [Landlord] from

_____

[6] Specifically, Landlord argues that, under the lease, Tenant covenanted to pay rent "in installments of TWO THOUSAND FIVE HUNDRED Dollars ($2,500) per month, in advance without demand on or before the 15[th] day of each month at the office of the LESSOR." See Tenant's Exhibit 8 (hereinafter "Lease") at ¶ 3. Landlord observes that the parties signed the lease on September 7, 2004, and the lease commenced on October 1, 2004. Landlord's Brief at 21-22. Landlord therefore asserts that "the first rent payment was due on September 15, 2004." Id. at 22. As a result, Landlord argues that "rent was due before the fire[,]" which occurred on September 29, 2004. Id. Further, Landlord claims that, even if no rent was due on September 15, 2004, "it was anticipated in the [l]ease that rent payments would still be made even if a fire occurred." Id. However, Tenant admitted at trial that he did not pay any amount of rent under the lease. N.T. Trial, 5/10/19-5/13/19, at 75.

any further duties thereunder." Id. at 21, 25 (unnecessary capitalization omitted).[7] Therefore, he claims that he is entitled to judgment as a matter of law. Id. at 27.

We deem this claim waived. Initially, Landlord does not indicate how he preserved this argument below in contravention of our Rules of Appellate Procedure. See Pa.R.A.P. 2117(c) (requiring, where an issue is not reviewable on appeal unless raised or preserved below, a statement of place of raising or preservation of issues); Pa.R.A.P. 2119(e) ("Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross-reference to the page or pages of the statement of the case which set forth the information relating thereto as required by Pa.R.A.P. 2117(c), or substantially the same information"); see also Youst v. Keck's Food Service, Inc., 94 A.3d 1057, 1071 (Pa. Super. 2014) ("[T]o preserve the right to a request a JNOV post-trial, a litigant must first request a binding charge to the jury or move for a directed or a compulsory non-suit at trial.") (citation and original brackets omitted). "Our appellate courts have

_____

[7] Landlord's argument regarding a material breach does not clearly align with the way he frames this issue in his statement of the questions involved, which mentions consideration. To the extent Landlord claims that the lease lacked consideration or contemplated a condition precedent that did not occur, we deem those arguments waived for lack of meaningful analysis and development. In re M.Z.T.M.W., 163 A.3d 462, 465 (Pa. Super. 2017) ("It is well-settled that this Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority.") (citations omitted).

long held that an [appellant] who does not follow Pa.R.A.P. 2117(c) and Pa.R.A.P. 2119(e) waives the related issues due to the defects in his brief." *Young v. S.B. Conrad, Inc.*, 216 A.3d 267, 274 (Pa. Super. 2019). "[I]t is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review." *Commonwealth v. Baker*, 963 A.2d 495, 502 n.6 (Pa. Super. 2008) (citations omitted).

Moreover, our review of the record does not demonstrate that Landlord raised this particular ground for JNOV — namely, that Tenant materially breached the lease by not paying rent and, consequently, Landlord was discharged from all liability under the lease — at trial or in pre-trial proceedings.[8] This Court has explained:

A party "may not, at the post-trial motion stage, raise a new theory which was not raised during trial." *Keffer v. Bob Nolan's*

_____

[8] We acknowledge that, at the close of Tenant's case, Landlord "move[d] for a judgment based upon the facts[,]" stating, "They have not proven their case. There is a lack of consideration that they alleged oral agreement [sic] and that violates the lease in any event. So, therefore, there is no case that they can proceed for on [sic]." N.T. Trial at 111-12. However, this motion only challenges the sufficiency of the evidence supporting Tenant's claim for breach of an oral contract; it does not contest the evidence Tenant presented to prove his claim for breach of the written lease. Further, Landlord made no argument that a material breach occurred, or that Tenant's failure to pay any rent relieved Landlord of any obligations under the lease agreement. Landlord also did not advance this argument in his opening and closing statements at trial. Instead, at trial, Landlord's primary arguments with respect to the written lease were that it did not require him to buy insurance for Tenant's personal items and fixtures at the building, that he bears no liability under the lease for any property damage in the building, and that — if he breached the lease by not giving 45 days' notice to Tenant that he was terminating it — that breach was not material. *Id.* at 31, 180, 182.

Auto Serv., Inc., 59 A.3d 621, 630 (Pa. Super. 2012) (citation omitted), appeal denied, … 69 A.3d 602 ([Pa.] 2013). Moreover, explaining waiver in the context of post-trial motions, our Supreme Court remarked: "Rule 227.1, which governs post-trial relief, provides in relevant part that a ground may not serve as the basis for post-trial relief, including [JNOV], unless it was raised in pre-trial proceedings or at trial." Straub v. Cherne Indus., … 880 A.2d 561, 566 ([Pa.] 2005). "The Rule further notes that error that could have been corrected by timely objection in the trial court may not constitute a ground for such a judgment. Pa.R.C.P. 227.1(b)(1)." Id.

E.S. Management v. Yingkai Gao, 176 A.3d 859, 864-65 (Pa. Super. 2017); see also Brown v. Halpern, 202 A.3d 687, 697 (Pa. Super. 2019) ("It is well-settled that issues raised for the first time in a post-trial motion are waived.") (citation omitted); Young, 216 A.3d at 275 ("Raising an issue for the first in a post-trial motion is insufficient to satisfy the appellate rules.").

Accordingly, we find Landlord's first issue waived.[9, 10]

_____

[9] We note that neither party nor the trial court mention waiver. Nevertheless, "we are bound by our precedents to invoke waiver sua sponte in this case." Tecce v. Hally, 106 A.3d 728, 732 (Pa. Super. 2014); see also Wirth v. Com., 95 A.3d 822, 837 (Pa. 2014) ("[B]ecause the burden rests with the appealing party to develop the argument sufficiently, an appellee's failure to advocate for waiver is of no moment.") (citation omitted); Commonwealth v. Triplett, 381 A.2d 877, 881 n.10 (Pa. 1977) ("Although the issue of waiver as to [the] appellant's second contention has not been addressed by either party, we may raise the issue of waiver sua sponte.") (citations omitted).

[10] Though the trial court addressed the merits of Landlord's first issue — determining that Tenant's obligation to pay rent was suspended because Tenant had been constructively evicted by Landlord's failure to repair the premises, see TCO at 7-8 — we may affirm the trial court on any basis. See, e.g., In re T.P., 78 A.3d 1166, 1170 (Pa. Super. 2013) ("[I]t is a well-settled doctrine in this Commonwealth that a trial court can be affirmed on any valid basis appearing of record. The precept may be applied even though the reason for sustaining the judgment was not raised in the trial court, relied on by that court in reaching its decision, or brought to the attention of the appellate courts.") (citations and internal quotation marks omitted).

In Landlord's second issue, he argues that, even assuming arguendo that Landlord had any obligation under the lease agreement, "the delay in notice under the Fire Clause only required payment of rent due."  Landlord's Brief at 27 (unnecessary capitalization and emphasis omitted).  Specifically, the at-issue Fire Clause in the lease provided the following:

> 21. FIRE CLAUSE: The TENANT hereby agrees to notify LESSOR of any damages to the leased PREMISES by fire or other hazard and also of any dangerous or hazardous condition within the leased PREMISES immediately upon the occurrence of such fire or other hazard or discovery of such condition.
>
> Upon occurrence of a fire, repairs shall be made by LESSOR as soon as reasonably may be done unless the costs of repairing the PREMISES exceed 25% of the replacement cost of the building in which case the LESSOR may, at its option, terminate the lease by giving TENANT written notice of termination within forty-five (45) days of the date of the occurrence.
>
> If the LESSOR does not terminate this Lease pursuant to the paragraph above, then LESSOR has forty-five (45) days after the date of the occurrence to give written notice to TENANT setting forth its unqualified commitment to make all necessary repairs or replacements, the projected date of commencement of such repairs, and the LESSORS best good faith estimate of the date of completion of the same.
>
> **If the LESSOR fails to give such notice, or if the date of completion is more than 90 days after the date of occurrence, then the TENANT may, at its option, terminate this lease and the LESSOR will be obliged to refund to the TENANT any rent allocable to the period subsequent to the date of the fire.**

Lease at ¶ 21 (emphasis added).

Landlord argues that the Fire Clause is clear that, in the event of a fire, Landlord "may at his sole discretion repair the leasehold or terminate the lease.  If [Landlord] elected to do neither, then [T]enant may terminate the

lease and receive a refund of rents paid post[-]fire." Landlord's Brief at 28-29. Thus, according to Landlord, Tenant would only be entitled, pursuant to the lease, to receive — at most — a refund of the rent payments he made subsequent to the fire. Id. at 29. However, Landlord observes that Tenant "did not pay any rent, so no rent refund can be due and owing." Id. Therefore, Landlord concludes that, as a matter of law, Tenant was not entitled to any damages. See id.

Once more, Landlord fails to show how he raised this issue below. See Pa.R.A.P. 2117(c), supra; Pa.R.A.P. 2119(e), supra; Youst, supra; Young, supra; Baker, supra. Based on our review of the record, it also appears that, yet again, Landlord did not present this theory until he filed his post-trial motion. See footnote 8, supra. Consequently, we also deem waived Landlord's second issue. E.S. Management, supra; see also Brown, supra; Young, supra. No relief is due.[11]

### Tenant's Appeal

We now turn to Tenant's appeal. He states only one issue for our review:

> Whether the lower court erred in failing to award prejudgment interest on the breach[-]of[-]written[-]contract award where the interest is based upon a sum that is fixed or has ascertainable monetary value in accordance with the Restatement (Second) of Contracts [§] 354(1)?

---

[11] Again, even though the trial court reached the merits of Landlord's second issue — opining that the Fire Clause does not limit the damages Tenant can recover in a breach-of-contract action, see TCO at 8 — we may affirm the trial court on any basis. See In re T.P., supra.

Tenant's Brief at 4.

To understand Tenant's prejudgment interest argument, we must give further background on Tenant's subleases and the jury's breach-of-written-contract award. Tenant describes that:

> In accordance with the agreement, [Tenant] was authorized to sublease parts of the leased premises to others and to collect the rents. Thereafter, [Tenant] entered into sublease agreements to rent three separate areas of the property with total rental income in excess of $120,000[,] at the end of the terms of the subleases.

> On September 21, 2004, the leased property was destroyed by a fire.[12] Following the fire, [Landlord] informed [Tenant] that he would use his insurance payment to repair the property and that his lease would continue. Repairs were immediately made to the part of the building housing a laundromat owned and operated by [Landlord]. As the days and weeks passed[, Landlord] continued to assure [Tenant] that his leasehold would be restored.

> The [l]ease agreement allowed [Landlord] the opportunity to terminate the lease by notifying [Tenant] in writing that the lease was terminated within 45 days of the fire. No notice of termination was given to [Tenant] within 45 days. Instead, [Landlord] waited until after he received his insurance payment before sending a notice of termination to [Tenant], 85 days after the fire damaged the building. [Landlord] terminated the lease, preventing [Tenant] from earning income from the leased property based upon existing sublease agreements.

Id. at 5-6 (internal citations omitted). Because of the foregoing, Tenant presently argues that he should receive prejudgment interest on the jury's $120,500 breach-of-written-contract award, which he says reflects the total amount of rental income he lost from the subleases. See id. at 13.

With respect to prejudgment interest, this Court has explained:

_____

[12] According to the trial court, the fire occurred on September 29, 2004, not September 21, 2004. See TCO at 2.

"[A] court has discretion to award or not award prejudgment interest on some claims, but must or must not award prejudgment interest on others." Cresci Const. Services, Inc. v. Martin, 64 A.3d 254, 258 (Pa. Super. 2013) (quoting, in part, Fidelity Bank v. Com. Marine and Gen. Assurance Co., 592 F.Supp. 513, 522 (E.D. Pa. 1984)) (internal quotations and original brackets omitted). In accordance, Pennsylvania has followed the Restatement (Second) of Contracts § 354, which provides:

(1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.

(2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due.

Restatement (Second) of Contracts § 354. Further, the comments to this section state, in pertinent part:

c. Where amount due is sufficiently definite. Under the rule stated in Subsection (1), a party is not chargeable with interest on a sum unless its amount is fixed by the contract or he could have determined its amount with reasonable certainty so that he could have made a proper tender. Unless otherwise agreed, interest is always recoverable for the non-payment of money once payment has become due and there has been a breach. This rule applies to debts due for money lent, goods sold or services performed, including installments due on a construction contract. The fact that the breach has spared some expense that is uncertain in amount does not prevent the recovery of interest. The sum due is sufficiently definite if it is ascertainable from the terms of the contract, as where the contract fixes a price per unit of performance, even though the number of units performed must be proved and is subject to dispute. The same is true, even if the contract does not of itself create a money debt, if it fixes a money equivalent of the performance. It is also true, even if the contract does not fix a money equivalent of the performance, if such an equivalent can be determined from established market prices. The fact that the extent of the performance rendered and the existence of the market price must be proved by

- 12 -

evidence extrinsic to the contract does not prevent the application of these rules.

...

d. Discretionary in other cases.  Damages for breach of contract include not only the value of the promised performance but also compensation for consequential loss.  The amount to be awarded for such loss is often very difficult to estimate in advance of trial and cannot be determined by the party in breach with sufficient certainty to enable him to make a proper tender.  In such cases, the award of interest is left to judicial discretion, under the rule stated in Subsection (2), in the light of all the circumstances, including any deficiencies in the performance of the injured party and any unreasonableness in the demands made by him.

Restatement (Second) of Contracts § 354 cmts. c, d....

This Court has expounded on Section 354 as follows:

[Section] 354 commands that prejudgment interest is awarded as a matter of right in four limited circumstances, which all require an examination of the contract.  In other words, a court examines whether the contract was to pay, or render a performance for, a monetary amount defined in the contract; render a performance for a monetary amount that can be calculated from standards set forth in the contract; or render a performance for a monetary amount calculated from the established market prices.  The disputed amount must be either specified in the contract or ascertained from the terms of the contract such that at the time of the breach, the breaching party can proffer a tender.  The disputed amount, in other words, must be liquidated at the time of the breach as a prerequisite for prejudgment interest.  In all other circumstances, including an award of consequential damages, prejudgment interest is awarded as a matter of discretion.

Cresci, 64 A.3d at 264-65 (emphasis added; internal citations omitted).

To illustrate, in Cresci, the appellant entered into a contract with a construction company for it to build a home for the appellant for $184,730.  Id. at 256.  Aside from the cost of building the home,

"the contract did not specify or refer to any monetary values, established market prices, or other fixed standards regarding a determination of mortgage expenses, legal expenses, inspection fees, and the costs of maintaining two homes in the event of a breach." Id. After some time, the construction company filed a complaint against the appellant, alleging that the appellant impeded the efforts of the construction company in completing the contract, and claimed that the appellant owed $34,378.56 on the balance of the contract. Id. at 256-57. In turn, the appellant counterclaimed for, inter alia, breach of contract, asserting that the construction company "had failed to complete several of the contract's required obligations." Id. at 257. Following a jury trial, the jury found that the construction company breached the contract and awarded the appellant $66,000 in breach-of-contract damages. Id. However, the trial court did not award the appellant prejudgment interest, determining that "the damages involved in this matter are simply not of the kind envisioned by § 354(1) of the Restatement[,]" and that the appellant "was adequately compensated by the jury's verdict, and no further prejudgment interest was warranted." Id. at 258 (citations omitted).

On appeal, the appellant argued that "pre-judgment interest in a breach of contract matter is a legal right." Id. (citation omitted). He averred that "he was forced to incur additional mortgage expenses, legal expenses, inspection fees, and associated costs with maintaining two properties since the home was uninhabitable[,]" and "theorize[d] that because the sums he claim[ed] [were] ascertainable, § 354(1) of the Restatement (Second) of Contracts applie[d] and § 354(2) ... [did] not." Id. (internal quotation marks and citations omitted). This Court, however, disagreed. Significantly, we observed that the appellant did "not argue that the contract provided for the payment of additional mortgage expenses, legal expenses, inspection fees, and associated costs with maintaining two properties[,]" or that "these sums constituted the reasonable costs of completing the construction contract or correcting the defective work." Id. (internal quotation marks and citations omitted). Further, we reasoned:

> In the case before us, we examine the contract to determine whether [the a]ppellant is entitled to prejudgment interest as of right. The contract specifically provided for the performance of a construction of a home in exchange for

$184,730, a monetary amount defined by the contract. Thus, $184,730 is a liquidated, ascertainable sum.

The contract, however, did not provide for a "performance" of "mortgage expenses, legal expenses, inspection fees, and associated costs with maintaining two properties." The contract also did not reference or permit a calculation of a monetary value for those items. [The construction company], therefore[,] could not have tendered a proffer to [the a]ppellant for those items, which necessarily required a breach of contract to render a "performance" of those items. [The construction company] is not charged with interest as of right on the jury's award of $66,000, because that amount was not fixed by the construction contract and [the construction company] could not have ascertained that sum by construing the terms of the contract. Accordingly, the jury's non-specific award of $66,000 does not represent a liquidated, ascertainable sum owed under the contract.

The jury's award ... "represents a loss incurred by [the a]ppellant as a consequence" of [the construction company's] breach "of the promised performance" to construct the home. Thus, contrary to [the a]ppellant's claim, an award of prejudgment interest on consequential damages is not awarded as a matter of right but is instead left to the court's discretion. [The a]ppellant, however, elected not to order the trial transcript. Thus, this Court cannot ascertain whether the trial court abused its discretion in declining to award prejudgment interest on an unliquidated sum.

Cresci, 64 A.3d at 264-66 (internal citations, original brackets, footnotes omitted...).

Krishnan v. Cutler Group, 171 A.3d 856, 873-76 (Pa. Super. 2017)

(emphasis omitted).

Here, Tenant argues,

[t]he market price for the ... leasehold was set by the amount that the [sub-]tenants were willing to pay for each sublease. Once the lease was wrongfully terminated by [Landlord], [Tenant] lost rental income on the three leases of $56,000, $14,400, and $50,400. The total loss of these rent payments equals the amount of the jury verdict ($120,500). The loss of rental income clearly

- 15 -

qualifies as a "value of which in money is ascertainable from established market prices of the subject matter." Davis [v. Borough of Montrose, 194 A.3d 597, 613 (Pa. Super. 2018)].

Tenant's Brief at 13 (some internal citations omitted). We disagree.

The lease agreement between Landlord and Tenant required that Tenant pay Landlord $90,000 over three years, in installments of $2,500 per month, to lease the premises. Lease at ¶ 3. These amounts constitute an ascertainable, liquidated sum under the lease.[13] In contrast, with respect to Tenant's subletting the premises, the lease merely sets forth that:

> 13 A. ASSIGNMENT AND SUBLETTING: The Tenant may, with the consent of the Landlord, which consent shall not be unreasonably withheld, sublease, or assign this Lease or its rights under this Lease. In such event, the Tenant shall remain liable for the payment of all rent required to be paid under this Lease, and for the performance of all terms, covenants, and conditions undertaken by the Tenant.

Lease at ¶ 13A. This provision makes no mention of Landlord's having to reimburse Tenant for lost sublease profits that Tenant sustains due to a breach of the lease, and Tenant does not point us to any other provision in the lease providing for such reimbursement. Similar to the circumstances in Cresci, the jury's award of $120,500 for lost sublease profits in the case sub judice

_____

[13] However, Tenant does not argue that the jury's $120,500 award represented rent Tenant had paid to Landlord to lease the premises and, even if he had made such an argument, the record clearly would not support it. Cf. Davis, 194 A.3d at 614 ("[T]he contract provided for a specified amount – $59,940 annual rent, payable in monthly installments of $4,995, plus all real estate taxes, insurance, utilities, and any and all maintenance, upkeep, and repairs. Because [the b]orough breached the lease agreement to pay a definite sum of money, [the l]andlord was entitled to pre-judgment interest as a matter of law.") (citations omitted).

was not fixed by the lease, and Landlord could not have ascertained that sum by construing the terms of the lease.[14] Thus, we conclude that the $120,500 award does not represent a liquidated, ascertainable sum owed under the lease; instead, it is a loss incurred by Tenant as a consequence of the Landlord's breach. Accordingly, Tenant is not entitled to prejudgment interest as a matter of right.[15] No relief is due.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/18/2020

_____

[14] In fact, Tenant recognizes that the amount of $120,500 "was a sum ascertainable based upon the terms of the subleases[,]" not based upon the terms of the at-issue lease between Landlord and Tenant. Tenant's Brief at 8 (emphasis added). Further, in addition to the lease not contemplating reimbursement for lost sublease profits, the trial court also discerned that "there is no specific language in the lease that would describe the income [Tenant] was receiving from those subleases. Nor does it appear that any detailed subleases were attached to make any lost income ascertainable." TCO at 5.

[15] Tenant does not challenge the trial court's decision to deny him prejudgment interest as a matter of discretion under Section 354(2). See TCO at 5-6. Accordingly, we do not address that decision.