2019 PA Super 160

| ERIC R. LINDE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SCOTT F. LINDE, | : | |
| | : | |
| Appellant | : | No. 451 EDA 2018 |

Appeal from the Judgment Entered April 2, 2018, 2018
In the Court of Common Pleas of Wayne County Civil Division at No(s):
167-CIVIL-2016

BEFORE: OTT, J., STABILE, J., and McLAUGHLIN, J.

OPINION BY McLAUGHLIN, J.: **FILED MAY 21, 2019**

Scott F. Linde appeals from the judgment entered in favor of Eric R. Linde and against Scott following a non-jury trial in this action to enforce a settlement agreement. We affirm.

Eric filed a Complaint in March 2016 alleging a breach of contract claim based on a June 2014 Settlement Agreement between Eric and Scott. Eric sought specific performance of the Settlement Agreement. Scott filed an Answer, with new matter and counterclaims. His counterclaims included a breach of contract claim alleging that Eric breached the Settlement Agreement. The trial court conducted a non-jury trial.

Eric and Scott are brothers. They have a sister, Barbara, who is not a party to this litigation. Their father started a construction company known as Linde Enterprises, Inc. ("LEI"), and gave his children shares of LEI common stock. Initially, Eric and Scott each owned 300 shares of stock and Barbara

owned 100 shares. Eric still owns 300 shares of stock. Scott placed his shares into the Scott F. Linde Family S Corporation Trust ("Scott Trust"). Scott is not only the settlor of the Scott Trust, but also the sole trustee and the sole beneficiary during his lifetime. Barbara placed her shares into the Barbara J. Linde Family S Corporation Trust ("Barbara Trust").

From 1999 until the present, the siblings have been involved in multiple lawsuits, including a 1999 shareholder derivative action filed by Eric against Scott and Barbara. A trial in the action was scheduled to begin June 9, 2014. However, on the morning of trial, Scott and Eric informed the court that they had reached a settlement agreement for that action and all other disputes.[1] They executed the Settlement Agreement. The parties appeared in court and acknowledged that they understood and accepted the settlement terms. The Settlement Agreement provided, in part, that, in exchange for Eric's stock in two companies, Scott would pay an initial payment of $1,000,000 and five installment payments of $200,000 and would transfer to Eric his partnership interests in Cloverleaf Partners, Golf Hill Partners, CWERSF Partnership, and his interest as a tenant in common in land in Texas Township. Specifically, it provided:

> Eric Linde sells his 300 shares of Linde Enterprises, Inc., (LEI) (the "Stock") and all his shares of stock in Lackawanna Land and Energy, Inc. (LLE stock) to Scott F. Linde for the consideration of Two Million ($2,000,000.00) Dollars plus

---

[1] Barbara filed a counterclaim in the Equity Action. She was given an opportunity to present evidence as to this claim, and chose not to. Her counterclaim was dismissed with prejudice.

the conveyance of Scott's Partnership Interest in three (3) partnerships and his 50% interest as a tenant in common of land in Texas Township, Wayne County as follows:

A. **One Million ($1,000,000.00) Dollars 31 days after the requirements for the sale of Eric's stock is completed in accordance with Article [3] of the LEI Shareholders Agreement (the "Settlement Date").**

B. One Million ($1,000,000.00) Dollars without interest (0%) in five (5) equal installments of $200,000.00 each with the first payment being due and payable one (1) year after the Settlement Date (First Payment Date) and each yearly payment thereafter in the amount of $200,000.00 being due and payable on the second, third, fourth and fifth payment dates.

C. Scott will convey his partnership interest in the following Partnerships to Eric on the Settlement Date:

1. His one third (1/3) Partnership Interest in Cloverleaf Partners

2. His full Partnership Interest in Golf Hill Partners being 42.859%

3. His full Partnership Interest in CWERSF Partnership being 42.859%

4. His 50% interest as a tenant in common of 17 acres of land in Texas Township

D. On the Settlement Date, as a condition of Settlement Eric and Gary Linde shall resign as Officers and Directors of LEI (effective at the time of Settlement).

Plaintiff's Trial Exh. 3 (emphasis added). During the negotiations, the parties did not discuss the Scott Trust purchasing any of Eric's stock shares and did not discuss purchase of the stock by Scott at terms other than those set forth in the Settlement Agreement. Trial Court Opinion, filed Apr. 20, 2018, at ¶¶ 21, 29.

- 3 -

Under the terms of the Settlement Agreement, Eric was required to comply with Article 3 of the LEI Shareholders Agreement, which required that he provide notice to LEI and the remaining stockholders before he could sell his 300 shares of LEI stock to Scott. Specifically, Article 3(a) of the LEI Stock Purchase Agreement, which was executed on March 7, 1990, provides:

> If any Stockholders desire to dispose of any of their voting common stock of the Corporation during his or her lifetime, whether by sale, gift, pledge, transfer voluntarily or by operation of law, except for gifts which may be made to the children of the Stockholder, or by any other means, he or she shall first give written notice to that effect to the Corporation and to the other remaining Stockholders. The Corporation shall have ninety (90) days after receipt of such notice to purchase all of such stock at the price established in paragraph 2[2] of this Agreement provided that reference in that paragraph to date of death shall here refer to the date written notice is received by Corporation. If all of such

_____

[2] Paragraph 2 provides:

> 2. Purchase Price
>
> (a) Upon the death of any Stockholder, the purchase price of his stock of the Corporation shall be its book value as of December 31, of the last calendar year prior to the death of the Stockholder, according to the books and accounts of the Corporation as of that date prepared by the Corporation's accountant, unless a value for purposes of this Agreement, and specifically referred thereto, shall have been established between December 31, of the last calendar year prior to the death of the Stockholder and the date of death of the Stockholder. The purchase price to be paid for the purchase and sale pursuant to this Agreement of each share of stock owned by the deceased Stockholder, shall be the book value of the Corporation as here before determined divided by the number of issued and outstanding shares.

Defendant's Trial Exh. 1, Stock Purchase Agreement, at ¶ 2(a).

shares are not purchased within the above period by the Corporation, all of the shares not purchased by the corporation shall be offered to the other remaining Stockholders at the price established in paragraph 2 of this Agreement, each of whom shall have the right within thirty (30) days from their notification to purchase such portion of the stock to be disposed of as the numbers of shares owned by him at such time shall bear to the total number of shares owned by all of the other remaining Stockholders; provided, however, that if any Stockholder does not purchase his full proportionate allotment of the stock, the unaccepted stock may be purchased by the other remaining Stockholders. If all of the stock to be disposed of is not purchased by the Corporation or the Stockholders before the expiration of the second period above, Stockholder may dispose of any remaining unsold shares in, any lawful manner; provided that no disposition may occur to any person or entity who would not qualify as a shareholder of a Corporation electing Subchapter S treatment under the Internal Revenue Code.

Defendant's Trial Exh. 1, Stock Purchase Agreement, at ¶ 3(a).

In a letter dated August 20, 2014, Eric provided LEI, the Scott Trust, and the Barbara Trust written notice of his intent to dispose of his three hundred shares of common stock of LEI. Plaintiff's Trial Exh. 4. That same day, LEI elected not to purchase any of the stock. Eric then sent written notice to the Scott Trust and Barbara Trust of LEI's decision to not purchase the stock and of his intent to sell the shares. Plaintiff's Trial Exh. 5.[3] The Barbara Trust elected not to purchase the stock.

The Scott Trust sent a letter to Eric on September 10, 2014, notifying Eric that it intended to purchase its pro rata share of Eric's LEI stock pursuant

---

[3] The letters were addressed to "Scott F. Linde[,] [Scott Trust]," at a James Street address and "Barbara Linde[,] [Barbara Trust]," at a Golf Hill Road address.

to the Stock Purchase Agreement, which was three shares. Plaintiff's Trial Exh. 6. On September 24, 2014, Eric sent a letter to counsel for Scott informing him that, as "Scott F. Linde" was the only shareholder who agreed to purchase the stock, Eric was "now free to convey his stock in any lawful manner" and therefore, under the Settlement Agreement, Scott's initial payment of $1,000,000 was due on October 20, 2014. Plaintiff's Trial Exh. 7. On September 26, 2014, more than 30 days after the initial letter from Eric, the Scott Trust informed Eric it would purchase under the Stock Purchase Agreement the 209 shares of LEI stock that the Barbara Trust declined to purchase. Plaintiff's Trial Exh. 8.

The Scott Trust initiated a civil action in Luzerne County against Eric and LEI requesting the court order Eric to sell and deliver 212 shares[4] of LEI stock to the Scott Trust ("Trust Action"). The Trust Action claimed the Scott Trust was able to purchase the Barbara Trust's shares even though it informed Eric after the 30-day window. The Action was transferred to Wayne County and, as of the time of trial in the instant action, was still pending.

Eric then initiated this action seeking specific performance of the Settlement Agreement.

---

[4] The 212 shares consisted of the 209 shares that the Scott Trust elected to purchase after the Barbara Trust declined and the Scott Trust's pro rata share of 3 shares that it elected to purchase.

After the parties had rested in the trial for this action, the trial court called Scott as a witness. The court questioned Scott, including questions about the Scott Trust, and required him to produce the trust document, which he did. N.T., 5/1/17, at 55-63.

The trial court made findings of fact, including that "Scott never intended to purchase Eric's LEI or LLE stock as per the terms of the Settlement. Rather, Scott's deceptive conduct in that regard was only a pretext to avoid the trial of Eric's 1999 [Derivative] Action." Trial Ct. Op. at ¶ 30. The trial court found that Eric completed the requirements for the sale of the LEI stock under the Stock Purchase Agreement on September 19, 2014, 30 days from the date of the letter Eric sent to the stockholders. *Id.* at ¶ 32. Therefore, the settlement date under the Settlement Agreement was October 20, 2014, and Scott owed Eric $1,000,000 on or before October 20, 2014. *Id.* at ¶¶ 32-33. Further, Scott would have owed two of the five $200,000 payments by the time of trial. *Id.* at ¶ 34. Scott did not make these payments.

At trial, Scott raised various defenses including claiming that the Stock Purchase Agreement required a three-step process: offering stock to LEI, offering stock to remaining shareholders, and offering to the shareholders the stock declined by other shareholders. He argued Eric breached the Settlement Agreement by not fulfilling his obligations to Scott and LEI in the Stock Purchase Agreement. He further claimed that Eric did not obtain Barbara's

consent for the transfer of Scott's interest in three Wayne County real estate partnerships and the interest in the Texas Township, Wayne County property.

The trial court found Scott's arguments lacked merit. Specifically, it concluded that the Stock Purchase Agreement did not have a three-step process. Trial Ct. Op. at ¶ 36. Rather, it required a two-step process before an LEI shareholder could sell all or a portion of the stock to a third party. *Id.* When Eric offered the stock to LEI, and LEI declined to purchase it, Eric was required to offer it to the other shareholders, which Eric did. *Id.* at ¶ 38. The shareholders had 30 days to purchase the stock. *Id.* The only shareholder who timely expressed interest was the Scott Trust, and it expressed interest in its pro rata share of Eric's stock, which was three shares. *Id.* at ¶ 39. The court concluded Eric could then sell his 300 LEI shares on or after September 19, 2014, in any lawful manner as long as the purchaser was qualified to receive Subchapter S treatment under the Internal Revenue Code. *Id.* at 40.

The court further found Eric did not breach the Settlement Agreement by any act or omission either before or after Scott's October 20, 2014 repudiation. *Id.* at ¶ 41. The documents that required preparation and execution at the closing were not prepared or executed because Scott and his counsel refused to participate in the preparation and execution of the documents. *Id.* at ¶ 43. It also found that if anyone had to notify Barbara of the partnership transfers it was Scott, and he failed to do so. *Id.* at ¶ 44.

The trial court therefore found in favor of Eric on his breach of contract claim. For the same reasons outlined above, the trial court found against Scott and in favor of Eric as to Scott's counterclaim.

Scott filed a timely notice of appeal, and raises the following issues:

1. The lower Court committed an abuse of discretion and erred as a matter of law in entering a non-jury verdict in favor of Eric and Ordering Specific Performance of the Settlement Agreement when Eric was in breach of the terms of the Settlement Agreement.

2. The lower Court committed an abuse of discretion and erred as a matter of law in entering a non-jury verdict against Scott on Count II of his Counterclaim against Eric when the evidence established that Eric was in breach of the terms of the Settlement Agreement.

3. The lower Court committed an abuse of discretion and erred as a matter of law:

a) In Ordering that Eric and Scott shall complete all transactions set forth in the Settlement Agreement and Scott shall pay Eric $1.4 million in accordance with Sections 1A and IB of the Settlement Agreement when Eric never complied with Article 3(a) of the Linde Enterprises, Inc. Stock Purchase Agreement which was required by Article IA of the Settlement Agreement before a Settlement Date could be established; and

b) In awarding Eric simple interest at six (6%) percent on the payments to be made under the Settlement Agreement from October 20, 2014 until the date of payment when no Closing was ever held because Eric was in breach of the Settlement Agreement.

4. The lower court committed an abuse of discretion and erred as a matter of law by calling Scott as a witness and Ordering Scott to produce the Scott F. Linde Family S Corporation Trust Agreement after both parties had rested and the record was closed.

Scott's Br. at 9-10.

Scott's first two issues claim the trial court erred in finding that Eric did not violate the terms of the Settlement Agreement. He claims the court erred when it ordered specific performance of the Settlement Agreement because Eric did not complete the required steps set forth in the Stock Purchase Agreement, which was a condition precedent to Scott's obligation to pay the $1,000,000. He maintains Eric did not complete the requirements of the Stock Purchase Agreement because there was no closing to transfer any of the stock from Eric to the Scott Trust. He further claims Eric failed to draft any of the documentation for transfer of the partnerships.

Scott also claims the trial court erred in finding against Scott on his counterclaim because the Scott Trust purchased the share on the pro rata basis, not Scott. He argues the trial court ignored the alleged 3-step process contained in the Stock Purchase Agreement. He further claims that until the separate action filed by Scott Trust is decided it is unknown whether the Scott Trust purchased 3 shares or 212 shares. He again claims that a closing with Scott Trust never occurred and Eric did not draft any of the required documents.

We apply the following standard of review:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record

or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

***Bank of N.Y. Mellon v. Bach***, 159 A.3d 16, 19 (Pa.Super. 2017) (quoting ***Stephan v. Waldron Elec. Heating and Cooling LLC***, 100 A.3d 660, 664–65 (Pa.Super. 2014)).

To establish a breach of contract occurred, the party must prove: "(1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages." ***Meyer, Darragh, Buckler, Beenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.***, 137 A.3d 1247, 1258 (Pa. 2016).[5] "Specific performance is an equitable remedy that permits the court 'to compel performance of a contract when there exists in the contract an agreement between the parties as to the nature of the performance.'" ***Lackner v. Glosser***, 892 A.2d 21, 31 (Pa.Super. 2006) (quoting ***Geisinger Clinic v. Di Cuccio***, 606 A.2d 509, 521 (Pa.Super. 1992)) (emphasis omitted). "Specific performance should only be granted where the facts clearly establish the plaintiff's right thereto, where no adequate remedy at law exists, and where justice requires it." ***Id.*** (quoting ***Clark v. Pennsylvania State Police***, 436 A.2d 1383, 1385 (Pa. 1981)).

---

[5] It is undisputed that the Settlement Agreement is a valid contract.

The trial court applied the doctrine of necessary implication to find that the Settlement Agreement included a term precluding the Scott Trust from purchasing Eric's LEI stock under the terms of the Stock Purchase Agreement.

The doctrine of necessary implication provides:

> [I]n the absence of an express provision, the law will apply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.

*Glassmere Fuel Serv., Inc. v. Clear*, 900 A.2d 398, 402-03 (Pa.Super. 2006) (quoting *Kaplan v. Cablevision of Pa., Inc.*, 671 A.2d 716, 720 (Pa.Super. 1996)(*en banc*)). A court should imply a missing term "only when it is necessary to prevent injustice and it is abundantly clear that the parties intended to be bound by such term." *Id.* at 403 (quoting *Solomon v. U.S. Healthcare Sys. Of Pa., Inc.*, 797 A.2d 346, 350 (Pa.Super. 2002)) (emphasis omitted). Further, "[a] court should only imply a term into a contract where it is clear that the parties contemplated it or that it is necessary to imply it to carry out the parties intentions." *Id.* (quoting *Slater v. Pearle Vision Ctr., Inc.,* 546 A.2d 676, 679 (Pa.Super. 1988))

The trial court found "ample evidence in the Settlement [Agreement] that these parties may well have contemplated and intended that Scott, as sole beneficiary of the Scott Trust, would be prohibited from purchasing Eric's LEI stock under the terms of the [Stock Purchase Agreement]." 1925(a) Op. at 12. The court noted that the Settlement Agreement provided that Scott

would pay Eric $2,000,000 and convey his partnership interest in three partnerships and his 50% interest as a tenant in common of land in Texas Township, Wayne County in exchange for Eric's LEI and LLE stock. In contrast, under the terms of the Stock Purchase Agreement, "Scott, as sole beneficiary of the Scott Trust, could purchase Eric's LEI stock for a price considerably less than that bargained for in the Settlement [Agreement]. Failure to imply this missing term would clearly destroy or injure Eric's right to receive the fruits of the contract." *Id.* at 12-13. It found that "[a]lthough the Settlement [Agreement] does not specifically prevent Scott from acquiring Eric's LEI stock through the Scott Trust, that term is implicit in the Settlement [Agreement]. The implication of this missing term is necessary to prevent injustice and it is abundantly clear that the parties intended to be bound by such term." *Id.* at 13.

We conclude the trial court did not err in applying the doctrine of necessary implication. As the trial court noted, it is clear the parties intended that Scott purchase the 300 shares through the Settlement Agreement, not through the Stock Purchase Agreement, and that implication of the provision is necessary to prevent injustice.

The court also concluded that Scott breached the agreement. "When performance of a duty under a contract is due, any nonperformance is a breach." *McCausland v. Wagner*, 78 A.3d 1093, 1101 (Pa.Super. 2013). "If a breach constitutes a material failure of performance, the non-breaching party is relieved from any obligation to perform; thus, a party who has

- 13 -

materially breached a contract may not insist upon performance of the contract by the non-breaching party." *Id.*

Here, the court found:

> Pursuant to Section I(A) of the Settlement [Agreement], once Eric completed the requirements under Article 3(a) of the [Stock Purchase Agreement], Scott had thirty-one (31) days to pay Eric one million ($1,000,000.00) dollars. According to the Settlement [Agreement], this date would also be considered the "settlement date." As discussed previously, the deadline to purchase Eric's LEI stock would have been September 19, 2014, which would also have been the date the requirements for the sale of Eric's stock was completed. Therefore, the settlement date would have been October 20, 2014. Scott was obligated under section I(B) of the Settlement to pay two hundred thousand ($200,000.00) dollars to Eric one (1) year after the settlement date. One (1) year after the settlement date would have been October 20, 2015. Scott was also obligated under section I(B) of the Settlement to pay four (4) more yearly installments of two hundred thousand ($200,000,00) dollars to Eric. The second installment would have been due October 20, 2016. Scott is in breach of the Settlement by failing to make payments on these dates and by failing to convey his partnership interests on the settlement date, October 20, 2014.

1925(a) Op. at 13. The record supports the trial court's findings of fact and it did not err in finding that Scott breached the Settlement Agreement and that Eric did not breach it.

Scott's claim that the court could not determine breach until the Trust litigation has ended lacks merit. The trial court was tasked with interpreting the Settlement Agreement and found that Scott breached the Agreement and that Eric did not. Its findings were supported by the record, and its legal conclusions were not error.

Scott next claims the trial court erred in ordering the parties to complete the transactions set forth in the Settlement Agreement and directing Scott to pay $1,400,000 before a settlement date could be established. He claims that to order specific performance, the court would have to determine whether Eric breached Article 3(a) of the Stock Purchase Agreement. He maintains that interpretation of this provision "is the core issue which must be decided in the Trust Complaint before it can be determined whether Eric has fully complied with Article 3(a) of the [Stock Purchase Agreement]." Scott's Br. at 54. Scott claims that the Scott Trust purchased, at a minimum, three shares and "because a closing was never held," Eric was in breach of the Settlement Agreement. *Id.*

We conclude the trial court did not err in ordering specific performance. The court found that the Settlement Agreement had an implied term that the Scott Trust would not purchase any of the stock under the terms of the Stock Purchase Agreement. Because, under the terms of the Settlement Agreement, the Scott Trust could not purchase the stock under the Stock Purchase Agreement, the court did not err in ordering specific performance of the Settlement Agreement.

Scott also argues that the trial court erred in awarding six percent interest. It claims this was error because the court erred in finding Scott breached the Agreement.

As we concluded the trial court did not err in finding Scott breached the Settlement Agreement, we find the trial court did not err in awarding six

percent interest on the definite sum of money. *See TruServ Corp. v. Morgan's Tool & Supply Co., Inc.*, 39 A.3d 253, 263 (Pa. 2012) (citing Restatement (Second) of Contracts § 354) (interest recoverable for definite sum of money from time for performance); 41 P.S. § 202 ("Reference in any law or document enacted or executed heretofore or hereafter to 'legal rate of interest' and reference in any document to an obligation to pay a sum of money 'with interest' without specification of the applicable rate shall be construed to refer to the rate of interest of six per cent per annum.").

In his last issue, Scott argues that the trial court abused its discretion and erred as a matter of law when the trial court called Scott as a witness and ordered him to produce the Scott Trust after both parties had rested.

"[A] trial judge may in the exercise of a sound discretion call and examine witness of [its] own accord." *Commonwealth v. DiPasquale*, 230 A.2d 449, 450 (Pa. 1967); *see also* Pa.R.E. 614. We have explained:

> [A] trial judge has the right if not the duty to interrogate witnesses in order to clarify a disputed issue or vague evidence. Unless the complaining party can establish the judge's questioning constituted an abuse of discretion, resulting in discernible prejudice, capricious disbelief, or prejudgment, a new trial will not be granted.

*Jordan v. Jackson*, 876 A.2d 443, 453–54 (Pa.Super. 2005) (quoting *Mansour v. Linganna*, 787 A.2d 443, 446 (Pa.Super. 2001)).

The court required that Scott produce the Scott Trust and questioned Scott about the Trust. The trial court determined that it needed to see the

Scott Trust to confirm that Scott was the sole beneficiary, which would clarify a disputed issue. We conclude that this was not an abuse of discretion.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/21/19