J-A21016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MULA DESIGN, LLC D/B/A MULA GROUP | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BESTCHOICE REALTY, INC. | : | |
| | : | |
| Appellant | : | No. 1582 MDA 2024 |

Appeal from the Order Entered September 25, 2024
In the Court of Common Pleas of York County Civil Division at
No(s): 2022-SU-000929

| | | |
|---|---|---|
| MULA DESIGN, LLC D/B/A MULA GROUP | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| BESTCHOICE REALTY, INC. | : | No. 1632 MDA 2024 |

Appeal from the Judgment Entered September 25, 2024
In the Court of Common Pleas of York County Civil Division at
No(s): 2022-SU-000929

BEFORE:    PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:                    **FILED: NOVEMBER 4, 2025**

Mula Design, LLC D/B/A Mula Group ("Mula") appeals from the judgment

entered against it on its claim of breach of contract against BestChoice Realty,

_____

[*] Former Justice specially assigned to the Superior Court.

Inc. ("BestChoice"). BestChoice cross-appeals from the judgment entered against it on its claim of breach of contract against Mula. We affirm.

In September 2021, the parties executed a contract (the "Agreement"), in connection with BestChoice's renovation of a hospital building into apartments. "Mula was to provide architectural and engineering services to BestChoice[.] The contract . . . state[d] the plans were to be for four stories of apartments totaling" seventy to eighty units. Trial Court Opinion, 1/2/25, at 1.[1] BestChoice provided "schematic floor plans," which outlined its preliminary intent for the renovations and, *inter alia*, the number of apartments and the inclusion of any communal amenities. N.T., 8/19-20/24 ("N.T. Trial"), at 10, 15, 49, 51. Mula's task was, *inter alia*, to incorporate the schematic floor plans "and create permit drawings in order [to obtain] a building permit" and "ensure . . . compliance with all the regulatory authorities." *Id*. at 12, 145.

For the initial design phase,[2] the Agreement set forth two categories of billing: (1) "a fixed fee of $108,000;"[3] and (2) "contingenc[y] services billed

_____

[1] For ease of review, when quoting the trial court's opinion, we have changed the references to "Mula Design" to Mula.

[2] The Agreement also set forth a subsequent construction phase, but this "project never progressed to" the construction phase. Trial Court Opinion, 1/2/25, at 1.

[3] The Agreement further divided the fixed fee into architectural services and mechanical and electrical engineering services.

hourly and estimated to be $16,500." Trial Court Opinion, 1/2/25, at 1. The Agreement did not define "contingency services," but under the heading for it appeared the phrase, "Unforeseen conditions requiring additional design effort." N.T. Trial at 383.

The Agreement also set forth the following terms: BestChoice must raise any billing disputes within ten days of receipt of the invoice, and both parties "shall work together in good faith to resolve any disputed charges." Agreement, 9/17/21, at 10, Exhibit A to Complaint, 4/20/22 ("Agreement, 9/17/21"). If the parties were "unable to resolve their differences within [thirty] days, [Mula] shall have the right to suspend or terminate service." *Id*. The "Agreement may be terminated by either party upon seven . . . days' written notice should the other party substantially fail to perform in accordance with [its] terms." *Id*. "In addition to its other remedies, [Mula] reserve[d] the right to withhold submission . . . of any plans or other documents . . . upon default by" BestChoice. *Id*. at 11.

Mula terminated the Agreement in January 2022, claiming BestChoice failed to pay outstanding charges. In April 2022, Mula filed the underlying complaint, averring breach of contract. BestChoice filed a counterclaim of breach of contract against Mula,[4] averring it had disputed some of the charges

---

[4] Both Mula and BestChoice also averred, in the alternative, unjust enrichment, and BestChoice further raised, in the alternative, claims of fraud and negligent misrepresentation. The trial court did not reach the merits of these alternative claims, and neither party has raised them on appeal.

in compliance with the terms of the Agreement, properly withheld payment on those, and paid the undisputed portions of the invoices.

This matter proceeded to a non-jury trial. Mula presented the testimony of its president, Joseph Mula ("Joseph") and senior project architect, Douglas Graby ("Graby"). BestChoice presented the testimony of its owner, Israel Weiss ("Weiss"), as well as the designer it hired, after Mula terminated the Agreement, to complete the design work. We review the relevant trial evidence.

Mula began work and issued an invoice in September 2021,[5] for $8,200 in fixed fees and $5,100 in contingency fees. Best Choice paid the full amount of this invoice. Mula next issued an invoice in November 2021, for $24,450 in fixed fees and $6,200 in contingency fees. Two days after receiving this invoice, "BestChoice inquired as to the source of the contingency work . . . billed. Notwithstanding that inquiry, BestChoice paid the fixed fee portion of the invoice but not the contingency work." Trial Court Opinion, 1/2/25, at 1-2.

_____

[5] The trial court and parties refer to the monthly invoices both by the date Mula issued them and the time frame in which the corresponding work occurred. For clarity, we refer to the invoices by their issuance date only. The issuance dates were: September 30, November 19, and December 9, 2021; and January 10, 2022.

Mula also issued an invoice on January 18, 2022 for structural engineering services only. These services were the subject of a separate agreement between Mula and BestChoice, not at issue in these appeals. **See** N.T. Trial at 34, 277.

Mula's witnesses, Joseph and Graby, testified to the following. Shortly after the execution of the Agreement, BestChoice made "a significant amount of changes," including transforming "one- and two-bedroom apartments to luxury two- and three-bedroom apartments," adding a gym, and changing "the scope from four to three floors" and then back to four floors. N.T. Trial at 27, 154, 159, 161. By October 2021, it was clear that the initial schematic floor plans "did not accomplish the objectives of the project as articulated by BestChoice." *Id*. at 27. Mula amended its plans accordingly, and these changes were "unforeseen and beyond the standard project development." *Id*. at 155. Weiss, on the other hand, denied that he requested significant "changes," characterized them instead as "revisions," and believed they were within the scope of the Agreement. *Id*. at 310-11. Weiss further believed that the Agreement did not limit "the number of revisions." *Id*. at 311.

Next, in December 2021, Mula issued an invoice for $32,190 in fixed fee work and $325 in contingency work. BestChoice paid $28,090, a "majority" of this bill, but not its entirety. Trial Court Opinion, 1/2/25, at 2. At trial, Weiss testified that he disputed the invoices, arguing to Graby that the charges represented more than the amount of work completed thus far. Graby testified that he had "monthly" meetings with Weiss to discuss his billing disputes. N.T. Trial at 176.

On January 10, 2022, Mula invoiced BestChoice for an additional $34,200 in fixed fee work. Weiss testified that he disputed these charges

again on the ground they represented more than the amount of work completed thus far. *See id*. at 329. Graby testified that at a meeting on January 13, 2022, Weiss was "still" not "happy with the contingency charges." *Id*. at 177. Nevertheless, Weiss agreed to pay "the current invoicing if" Mula showed "all what they have done" and provided "time sheet backup" and "work orders." *Id*. at 177, 330-31, 340.

Accordingly, on January 18, 2022, Mula provided an Excel spreadsheet showing the total hours worked, by week, of named employees of Mula and two subcontractors, along with each employee's billing rate. *See id*. at 177-78; *see also* Joint Trial Exhibit 9, Memorial Hospital Apartment Rehabilitation (undated). The only other information on the spreadsheet was a list of the invoices issued so far, with the total amount of charges for each, again without a breakdown of fixed fees and contingency fees. There was no explanation of whether the employees' hours were attributable to fixed fees or contingency fees, nor was there any description of the work completed.

At trial, Weiss testified that he did not understand the spreadsheet: he "couldn't figure out . . . where those numbers [were] coming from;" he did not recognize some of the employees; and the numbers "contradict" and "did not add up to the [figures on the] invoices." N.T. Trial at 333. Weiss emailed Mula, but the only response was an email from Joseph, stating he would not "go back and forth on hours," percentages, or square footages "anymore." *Id*. Weiss testified: (1) he did not believe Mula worked in good faith to resolve

the disputed fees; and (2) BestChoice was not in default, because it had paid all undisputed fees. *See id*. at 339, 344.

On cross-examination Joseph acknowledged there were several discrepancies between the Excel spreadsheet and the monthly invoices. *See id*. at 82, 84-85, 90. Nevertheless, Joseph believed that Mula worked in good faith with BestChoice to resolve the disputed charges. *See id*. at 36.

On January 26, 2022, through its counsel, Mula provided written notice of termination of the Agreement. BestChoice did not pay the invoice issued on January 10, 2022. Meanwhile, Mula had produced "signed and sealed construction documents" intended for submission to the township for building permits. N.T. Trial at 27-28, 101. Mula did not provide these to BestChoice, citing the provision in the Agreement permitting it to withhold documents upon a default by BestChoice. *See id*. at 42. Mula sought damages in the amount of $50,925, representing the total unpaid charges.

Finally, at trial BestChoice called Eric Brown ("Brown"), whom it had hired, along with an engineer, to complete the architectural design work. Brown testified to the following. He and the engineer "basically [did] the entire project, [creating] preliminary layouts and then . . . permit drawings so that [BestChoice] could get prices from different contractors." *Id*. at 185. When asked whether the "signed and sealed plans from Mula would have been helpful," Brown replied: "Not really because the scope of the project was completely — well, not completely but it was different . . .. The layouts were

all different by the time we finished the job." ***Id***. at 187. BestChoice ultimately submitted Brown's design to the township. BestChoice paid Brown and the engineer $42,000. ***See id***. at 186.

The trial court announced its findings and verdict on the record in court. It first found Mula did not work in good faith to resolve the billing disputes, but stated this was "not a major point [on] which [it was] hinging [its] decision." N.T. Trial at 386. The court then found Mula breached the Agreement by improperly terminating it, because at that point, BestChoice had properly disputed the invoices, payment on the later invoices was not yet due, and thus BestChoice was not in default. ***See id***. at 388-89.

The trial court then found BestChoice also breached the Agreement because it failed to pay ***undisputed*** charges, including the entirety of the January invoice. ***See id***. at 390-91. However, the trial court denied damages to both parties, finding both "acted with unclean hands." ***Id***. at 391.

In sum, on Mula's claim of breach of contract, the trial court entered a verdict in favor of BestChoice. On BestChoice's claim of breach of contract, the court entered a verdict in favor of Mula. The court explained: "[E]ssentially, both of the parties here walk away with a zero verdict." ***Id***. at 393.

Both parties filed post-trial motions. The trial court denied them and entered judgment. Both parties filed notices of appeal, and they and the trial court have complied with Pa.R.A.P. 1925(b).

This Court consolidated Mula's appeal and BestChoice's cross-appeal. In essence, both parties argue the trial court erred in finding it breached the Agreement, and in denying it damages.

We review Mula's appeal first. It presents two issues for our review:

1. Did the court below err in finding that [Mula] breached the [A]greement at issue?

2. Did the court below err in not awarding [Mula] damages for BestChoice['s] breach of the [A]greement at issue?

Mula's Brief at 3.

In its first issue, Mula avers the trial court erred in finding it breached the Agreement. We first review the applicable standard of review and relevant contract principles:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

***Linde v. Linde***, 210 A.3d 1083, 1090 (Pa. Super. 2019) (citation omitted).

Additionally, this Court has stated:

> When reviewing a verdict in a non-jury trial, this Court "will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the [trial] court's determination was manifestly erroneous, arbitrary and capricious[,] or flagrantly contrary to the evidence." "The test is not whether this Court would have reached the same result on

the evidence presented, but rather, after due consideration of the evidence the trial court found credible, whether the trial court could have reasonably reached its conclusion."

*El-Gharbaoui v. Ajayi*, 260 A.3d 944, 965-66 (Pa. Super. 2021) (citations omitted).

"To establish a breach of contract occurred, the party must prove: '(1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages.'" *Linde*, 210 A.3d at 1090 (citation omitted). "[C]ontract construction and interpretation is generally a question of law for the court to decide." *Pops PCE TT, LP v. R&R Rest. Grp., LLC*, 208 A.3d 79, 87 (Pa. Super. 2019) (citation omitted).

On appeal, Mula challenges the trial court's findings that it did not provide adequate explanation for the invoices within thirty days of BestChoice's disputes, and that it failed to work in good faith to resolve the invoice disputes. Mula reasons: (1) BestChoice first disputed charges on November 21, 2021; but (2) BestChoice did not offer, until January 13, 2022, to pay the "outstanding balance upon receipt of backup of the charges," and (3) by then, the thirty-day "good faith" period for November 2021 invoice "had long expired." Mula's Brief at 22. In any event, Mula asserts, it had met with BestChoice twice in that initial thirty-day period "in an effort to resolve the disputed charges by explaining why contingency fees were charged." *Id*. at 23. Mula contends these meetings "clearly demonstrate[d] a good faith attempt at resolving the charges." *Id*. To this end, Mula also avers "the trial

court's finding[,] that [it] had no right to terminate the Agreement . . . is not supported by the record." *Id*. at 25 (unnecessary capitalization omitted). Mula thus concludes the trial court erred in finding it breached the Agreement by terminating it on January 26, 2022.

As stated above, the trial court first concluded that Mula did not work in good faith to resolve the billing disputes. *See* N.T. Trial at 385. The court found: "As of January 1, 2022, Mula and Best Choice **had no meaningful discussions** as to the billing disputes." Trial Court Opinion, 1/2/25, at 2 (emphasis added). The court also noted that although Mula provided a spreadsheet of hours worked, it did not do so within thirty days of BestChoice's first dispute, and furthermore, the spreadsheet did not describe any of the work nor itemize fixed fees or contingency fees. *See id*. "Thus, neither BestChoice nor Mula (nor this court for that matter) could perform any analysis of the work to see if it should be billed as part of the fixed fee or contingency fee." *Id*. Nevertheless, the court stated this conduct was "not a major point [on which it was] hinging [its] decision."[6] N.T. Trial. at 386.

Furthermore, the trial court found BestChoice's nonpayment of the **disputed** fees was "reasonable." Trial Court Opinion, 1/2/25, at 5. The trial court thus found Mula breached the Agreement by terminating it. The court

---

[6] As we discuss **infra** in addressing BestChoice's claims, the trial court opinion further stated this was not a **material** breach of the Agreement, and this "breach was not so egregious as to end the contract completely." Trial Court Opinion, 1/2/25, at 4, 5.

reasoned that at that time: BestChoice had properly disputed the invoices; payment on the later invoices was not yet due; and thus BestChoice was not in default. *See* N.T. Trial at 388-89.

Upon review, we determine the record supports the trial court's findings and the verdict on Mula's claim of breach of contract. *See Linde*, 210 A.3d at 1090. We do not find persuasive Mula's premise that its two meetings with BestChoice within that first month demonstrated its good faith, and thus a thirty-day clock began to run against BestChoice. First, Mula ignores the trial court's finding that "[a]s of January 1, 2022, Mula and BestChoice had no meaningful discussions as to the billing disputes." Trial Court Opinion, 1/2/25, at 2. Mula also ignores the trial court's reasoning that the billing disputes were more than thirty days old because Mula had failed to work in good faith to resolve them. *See* N.T. Trial at 388-89.

Our review of the trial testimony supports the trial court's rationale. Although Graby testified that he had "monthly" meetings with Weiss about the billing disputes, neither Graby nor Joseph claimed they resolved Weiss' questions. *Id*. at 176. Indeed, Graby stated that in December 2021, Weiss "still" was not "happy" with the contingency charges and requested another meeting. *Id*. at 177. It was at this subsequent meeting, on January 13, 2022, that Weiss agreed to pay the outstanding fees if Mula could satisfactorily explain them. *See id*. at 177, 330. Finally, Mula does not dispute the trial

court's extensive discussion that its subsequent Excel spreadsheet failed to resolve BestChoice's questions about the billing.

The trial court was free to weigh Joseph's, Graby's, and Weiss' testimony and on appeal, we defer to its factual findings. **See El-Gharbaoui**, 260 A.3d at 965-66; **see also Linde**, 210 A.3d at 1090. We reiterate that the court found BestChoice was justified in not paying the **disputed** funds, and this nonpayment was not a breach of the Agreement. We conclude the trial evidence supports the trial court's finding that Mula breached the Agreement by terminating the Agreement based on this nonpayment.

In its second issue, Mula asserts the trial court erred in denying damages for BestChoice's breach of the Agreement. As stated above, Mula sought an award of $50,925, the amount of the unpaid charges. We reiterate that when reviewing a non-jury trial verdict, we "determine whether the findings of the trial court are supported by competent evidence and whether the" court erred in applying the law. **Linde**, 210 A.3d at 1090.

Mula first points out that under the terms of the Agreement, BestChoice "agree[d] to be liable and pay [Mula] for all labor done, work performed, materials furnished, and all expenses incurred for all work . . . up to . . . the day work is terminated." Mula's Brief at 26. Mula also maintains that BestChoice: (1) initially breached the Agreement by not remitting full payment for the November 2021 invoice; (2) again breached by withholding payment on charges that it did not dispute; and (3) breached the Agreement by not

paying all outstanding charges upon Mula's termination of the Agreement. Mula then asserts, as it did in its first issue, that it "was entitled to terminate the Agreement for BestChoice's failure to remit payment for the outstanding charges" of the November 2021 invoice. *Id*. at 27. In further support, Mula argues that the contingency fees charged were proper.

In denying damages to Mula, the trial court reasoned as follows: Mula was the first party to breach the Agreement when it improperly terminated the Agreement on January 26, 2022. *See* N.T. Trial at 389. Mula also did not work in good faith to resolve the billing disputes. *See id*. at 388-89; *see also* Trial Court Opinion, 1/2/25, at 4. Mula thus "act[ed] with unclean hands," and the court declined to award it damages. N.T. Trial at 391.

After review, we determine the record supports the trial court's findings. *See Linde*, 210 A.3d at 1090. We incorporate our above discussion, especially the trial court's reasoning that Mula breached the Agreement first by improperly terminating it, and that it failed to work in good faith to resolve the billing disputes, as required by the Agreement itself. The trial court was free to weigh the evidence and the witnesses' testimony, and we conclude the record supports its ruling. No relief is due on Mula's second issue.

We now review BestChoice's appeal. It presents two issues for our review:

> [1.] Did the trial court err in concluding that [BestChoice] breached the [A]greement by failing to pay fees from the January 10, 2022, invoice, when [Mula] had materially breached the [A]greement before payment was due?

- 14 -

[2.] Did the trial court err in concluding that [BestChoice] breached the [A]greement by failing to pay "some undisputed amount" since there was insufficient evidence to quantify any such "undisputed amount"?

Best Choice's Brief at 4.

In its first issue, BestChoice avers the trial court erred in finding it breached the Agreement by failing to pay the January invoice, which included undisputed charges. BestChoice reiterates that the court found Mula was in breach by failing to work in good faith to resolve the billing disputes and in terminating the Agreement.[7] BestChoice then avers Mula's breach was **material**, and this material breach excused it (BestChoice) from continuing to perform any obligation under the Agreement.[8] Additionally, BestChoice maintains that at the time Mula terminated the Agreement, BestChoice was

_____

[7] The first portion of BestChoice's argument is a response to Mula's appeal, and avers this Court should affirm the trial court's finding that Mula breached the Agreement. **See** BestChoice's Brief at 21-31. We have addressed those issues above.

[8] As noted above, the trial court found Mula's failure to work in good faith was not a **material** breach of the Agreement, as it "was not so egregious as to end the contract completely." Trial Court Opinion, 1/2/25, at 4, 5. **See also Linde**, 210 A.3d at 1091 (explaining that "[i]f a breach constitutes a material failure of performance, the non-breaching party is relieved from any obligation to perform"); **Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.**, 40 A.3d 1261, 1271 (Pa. Super. 2012) (stating that if a "the breach is an immaterial failure of performance, and the contract was substantially performed, the contract remains effective[, and] the non-breaching party does not have a right to suspend performance").

- 15 -

not in default because the outstanding fees were either properly in dispute or not yet due. *See id*. at 36.

"A party 'may not, at the post-trial motion stage, raise a new theory which was not raised during trial.'" *E.S. Mgmt. v. Yingkai Gao*, 176 A.3d 859, 864 (Pa. Super. 2017). Additionally, Pa.R.A.P. 2119(a) requires an appellant's argument to include "such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). This Court has held that under this rule, we may find an issue waived for failure to present a "developed, reasoned, supported, or even intelligible argument" and for failure to cite relevant case or statutory authority. *Kelly v. Carman Corp.*, 229 A.3d 634, 656 (Pa. Super. 2020) (citations omitted).

Pertinently, we note this Court has set forth factors for determining the materiality of a contract breach:

a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

b) the extent to which the injured party can be adequately compensated for that part of the benefit of which he will be deprived;

c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

*Int'l Diamond Importers, Ltd.*, 40 A.3d at 1271 (*quoting* Restatement (Second) of Contracts § 241 (1981)).

After careful review of the record and BestChoice's appellate brief, we determine it has waived any claim that Mula's failure to resolve the billing disputes was a **material** breach of the Agreement. At trial, BestChoice did not present any evidence or argument addressing the above factors for determining the materiality of a breach. In its closing argument, BestChoice merely argued that it did not breach the Agreement because: (1) it paid all of the undisputed charges; and (2) it was not required to pay the disputed charges within thirty days. **See** N.T. Trial at 372. BestChoice did not make any claim that Mula's breach was material, nor that this material breach excused it from further performance under the Agreement. Instead, BestChoice raised a material breach-claim for the first time in its post-trial motion. Under these circumstances, BestChoice has waived this claim for our review. **See E.S. Mgmt.**, 176 A.3d at 864.

Furthermore, on appeal BestChoice fails to develop an argument that Mula's breach was material. Although BestChoice properly set forth the relevant law, including the above five factors, it does not address the relevance of any of these factors to the case *sub judice*. **See** BestChoice's Brief at 32-34 (*citing*, *inter alia*, **Int'l Diamond Importers, Ltd.**, 40 A.3d at 1271). Instead, BestChoice's argument is:

> Mula's January 26, 2022, termination letter made clear it did not intend to fulfill the [Agreement] and, therefore, **constituted a**

> **material breach**. Pursuant to the [Agreement], Mula was only entitled to terminate . . . if the reason for termination was through no fault of its own. Mula's letter of termination stated that the reason for termination was failure to pay outstanding fees owed. But the only outstanding fees at the time of termination were fees disputed by BestChoice. The trial court found that Mula failed to work in good faith to resolve the disputed fees, therefore, concluded that Mula breached the Contract first by terminating the Contract without cause.

BestChoice's Brief at 35 (record citations omitted and emphasis added). While the above passage argues that Mula breached the Agreement — an issue that we have addressed above — it does not articulate beyond a bald conclusion why the breach was material. Accordingly, we also determine BestChoice has waived any material breach-claim on the ground it failed to develop a proper argument. **See** Pa.R.A.P. 2119(a); **see also Kelly**, 229 A.3d at 656.

In its second issue, BestChoice avers the trial court should have awarded it damages, where it had to "hire and pay another architect to do the same job Mula was . . . partially paid[] to do." BestChoice's Brief at 37.

For ease of review, at this juncture we set forth the following context. At trial, the parties presented a joint exhibit, which included a January 21, 2022 email from Joseph to Weiss that stated: "[O]ur total contract value is $151,000 (original) and $13,400 (supplemental) for a total of $164,900.[9] To date, we've billed for $116,765 which is [**seventy-one percent**] of our contracted value." Joint Trial Exhibit 32, Email from Israel Weiss to Joseph

---

[9] We calculate the sum of $151,000 and $13,400 to be $164,400 — a difference of $500 from Mula's figure of $164,900.

Mula, 1/23/22, at 2 (emphasis added). Weiss testified that he initially disagreed with this seventy-one percent figure, because Mula improperly included "post-construction" work and work by Mula's subcontractor, C.S. Davidson, which had not been done. N.T. Trial at 336. Instead, Weiss estimated that Mula finished sixty to seventy percent of the work. *See id*. at 335. Nevertheless, Graby explained that Mula calculated the work completed "by square footage," not the number of apartments, and Weiss "accepted that." *Id*.; *see also id*. at 330 (Weiss testifying, "I claimed that [Graby] didn't finish more than [sixty] percent of the project because it was less apartments, but then I agreed that maybe he finished [seventy-five] percent of the project").

In announcing its finding that BestChoice failed to pay undisputed charges, the trial court reasoned that BestChoice could have calculated an appropriate amount to pay:

> I accepted . . . Weiss's representation that [Mula had completed seventy-one percent of the total work.[10]] Again, in the final analysis, I don't know that [seventy-one] percent — whether it was [seventy-five] percent, [ninety] percent, [sixty] percent — makes a difference, but I accepted . . . Weiss's number because it was the most generous to him in determining whether [Mula] had breached the contract or not.

_____

[10] *See also* N.T. Trial at 389 (trial court stating, "[W]hile BestChoice may have disputed a part of the December invoice . . . , the entire amount was not undisputed, and it was unclear to me, . . . Weiss testified that he believed [seventy-one] percent of the work was done").

*Id*. at 393. In its opinion, the court clarified that it did not make a specific finding that Mula had completed seventy-one percent of the design work, but instead merely "made assumptions based on the percentage of the project . . . Weiss believed had been completed." Trial Court Opinion, 1/2/25, at 4.

On appeal, BestChoice now contends the trial court should have either: (1) accepted Weiss' testimony that Mula only completed sixty percent of the design work; or (2) made "some finding of a percentage of work completed to determine whether BestChoice had failed to pay all undisputed fees." BestChoice's Brief at 41. In other words, BestChoice avers, the trial court could not have determined that it failed to pay "undisputed fees" without first "finding about how much was undisputed and, therefore, owed." *Id*. at 40-41.

> In denying damages to BestChoice, the trial court reasoned:
>
> [W]e did not fault BestChoice and find it breached the [A]greement by not paying in full. We did fault BestChoice for not paying *any* of the [January] invoice . . . even though it was not all disputed. While Mula breached the express terms of the contract by not working in good faith to resolve the billing dispute, that breach was not so egregious as to end the contract completely. Thus, when BestChoice decided to withhold payment completely, it breached the payment terms of the contract. [Non-p]ayment for undisputed services is a breach so egregious as to lead to an end to the contract . . .. Thus, we did not err[] by expecting BestChoice to make payment of the undisputed portion of the invoice, even though we found Mula Design had breached the contract.

Trial Court Opinion, 1/2/25, at 5 (emphasis in original and citation and unnecessary capitalization omitted). Furthermore, as noted above, the trial

- 20 -

court considered that "in the final analysis," whether Mula completed seventy-one percent, or sixty, seventy-five, or ninety percent of the total design work did not "make[] a difference." N.T. Trial at 393.

After careful review of the record, the trial court's findings at trial, its opinion, and BestChoice's brief, we conclude that no relief is due. First, Weiss testified that he *initially* rejected Mula's figure that it had completed seventy-one percent of the work, and instead Weiss told Graby "he didn't finish more than [sixty] percent of the project." N.T. Trial at 330. However, Weiss twice testified that Graby explained it calculated the total square footage completed, not the number of apartments, and Weiss "accepted" this, and even agreed to a figure of seventy-five percent. *Id*. at 330, 335. The trial court was free to weigh this evidence and on appeal, we do not supplant its findings with our own. *See El-Gharbaoui*, 260 A.3d at 965-66.

In any event, while BestChoice argues it was necessary to determine the amount or percentage of undisputed fees not paid, it ignores the trial court's explicit discussion that it did not base the denial of damages on such a figure. *See id*. Instead, the court denied damages because BestChoice failed to pay *any* of the January invoice, despite its agreement that at least *some* of the work was complete. The court found that non-payment "for undisputed services [was] a breach so egregious as to lead to an end to the" Agreement. Trial Court Opinion, 1/2/25, at 5. Stated differently, under the trial court's above discussion, it would not have awarded damages to

BestChoice even if it had found it paid a particular amount of percentage of the undisputed charges.  Accordingly, no relief is due on BestChoice's second issue.

In light of the all the foregoing, we do not disturb the trial court's rulings, including the denial of damages, on Mula's and BestChoice's claims of breach of contract against the other.  Thus, we affirm the judgment.

Judgment affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/04/2025